RITA M. ALLEN *v.* PATHMARK OF BRIDGEPORT, INC.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 8—decision released September 12, 1978

*Hadleigh H. Howd,* with whom was *Michael L. Robbins,* for the appellant (defendant).

*Richard S. Scalo,* with whom was *Abraham I. Gordon,* for the appellee (plaintiff).

BOGDANSKI, J.   The plaintiff brought this action to recover damages for personal injuries allegedly caused by the negligence of the defendant in failing to keep its premises in a reasonably safe condition. From a judgment rendered upon a verdict for the plaintiff the defendant has appealed, assigning error in the court's denial of its motion for a mistrial, in the denial of its motion for a continuance, and in the granting of the plaintiff's motion to amend.

We observe at the outset that the defendant makes no claim of error as to liability or the size of the award, or that the verdict was not in accord with the law or evidence.  The defendant has confined its claims on this appeal solely to motions involving the court's exercise of discretion.

On October 15, 1970, the plaintiff, seventy-two years of age, suffered a fall while a patron at the defendant's premises and sustained a fracture of the right hip which required three separate operations and which resulted in a permanent disability to the right hip and leg. In October, 1972, the plaintiff brought this action claiming damages of $50,000. In response to a motion for disclosure, the plaintiff revealed that she incurred special damages of $6284.05 and sustained a partial disability of the right hip, and she referred the defendant to the medical reports of Walter T. Shanley, an orthopedic surgeon. Those reports indicated that the plaintiff's right leg was one-half inch shorter than her left leg, that she had traumatic arthritis and aseptic necrosis of the right hip; that she would not be a candidate for total replacement arthroplasty; that she had a 50 percent permanent partial disability of the right hip, which disability could conceivably get worse in the future; and that the plaintiff was advised to return to the physician only if her symptoms got significantly worse. The plaintiff was last treated by Shanley on November 9, 1972. She sought no further medical treatment from that date.

At a pretrial hearing before *Naruk, J.,* held on April 29, 1977, the defendant took the position that there was no liability and made no offer of settlement. The plaintiff in turn submitted special damages of $7329.45 and advised counsel and the judge that because of the high special damages, the degree of permanent disability, the low ad damnum, and the problems which had confronted the plaintiff's counsel in the recent case of *Deedy* v. *Marsden,* 172 Conn. 568, 375 A.2d 1032, she intended to file a motion to increase the ad damnum clause.

After the pretrial hearing, the plaintiff's counsel requested his office staff to contact Shanley's office to determine his availability for trial. Neither the plaintiff's counsel nor any member of the firm spoke personally with Shanley. On June 16, 1977, at the selection of the jury, the plaintiff filed her motion to increase the ad damnum to $250,000. The court granted the motion over the defendant's objection.

On Friday, June 17, 1977, the plaintiff's counsel met briefly with Shanley in court prior to his taking the stand. Shanley advised counsel that because he had not seen the plaintiff since 1972 he had his office call Mrs. Allen for a medical examination in order to update his findings. The plaintiff's counsel had not been previously advised of that examination. The record reveals that no written or oral report of that examination was made by the physician to either the plaintiff or her counsel.

While on the stand Shanley was asked for an opinion as to the permanent disability sustained by the plaintiff. He stated that she had a 75 percent permanent partial disability of the hip and that her right leg was three-quarters of an inch shorter. This was the first time counsel for the plaintiff became aware of any increase in disability over that reported in November, 1972.

The defendant moved for a mistrial, claiming surprise on the ground that the medical testimony now indicated increased disability from what had been reported in the medical reports of 1972. The court took note of the claim but advised counsel that he would have several days in which to arrange for a medical examination and ordered the plaintiff to

be available for such an examination. The plaintiff's counsel then continued his examination of Shanley and offered into evidence microfilms of x-rays taken prior to November, 1972, and x-rays taken in May, 1977. There was no objection to the introduction of those x-rays.

The defendant contends that the plaintiff's counsel failed in his duty to notify it and the court of the May 2, 1977, medical examination and of the substantial change in the plaintiff's physical condition. The plaintiff, in turn, claims that counsel could not inform the defendant and the court of the increased disability because neither he nor any member of his firm had any knowledge of the May 2, 1977, examination until Shanley's testimony in court on June 17, 1977.

At the time of this trial, a party's continuing duty to disclose was governed by § 172A of the 1963 Practice Book, as amended, which states in part: "If subsequent to compliance with an order issued pursuant to Sec. 167 or Sec. 168 and prior to or during trial, a party *discovers* additional material previously requested or ordered subject to discovery or inspection, he shall promptly notify the other party, or his attorney, and the court of the existence thereof . . . ."[1] (Emphasis added.) Discovery or knowledge of a changed medical condition, therefore, would be a prerequisite before any sanction could be invoked under § 172A. The defendant, however, is unable to point to any part of either the

---

[1] Section 172 of the 1978 Practice Book deals with the continuing duty to disclose. Under this section, if a party *discovers* that prior compliance with an order for discovery is no longer true and the circumstances are such that a failure to amend the compliance is a *knowing* concealment, he must notify the other party and serve a corrected compliance.

record or the transcript which shows any indication that the plaintiff or her counsel knew of Dr. Shanley's findings of May 2, 1977, prior to his testimony on June 17, 1977. On the facts of this case, there is no violation of § 172A. Cf. *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 404 A.2d 889.

The defendant next contends that a mistrial should have been granted on the ground that it was unable to prepare adequately for trial without advance knowledge of the plaintiff's changed medical condition. "The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial and the whole proceedings are vitiated." *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433. " 'The granting of such a motion rests largely in the discretion of the trial court. *State* v. *Williamson,* 134 Conn. 203, 204, 56 A.2d 460. In the exercise of that discretion the court may properly consider whether diligence was exercised in the preparation of the case for trial. . . .' *Teitelman* v. *Bloomstein,* . . . [155 Conn. 653, 662, 236 A.2d 900.]" *Izzo* v. *Crowley,* 157 Conn. 561, 565, 254 A.2d 904.

The record reveals that the plaintiff furnished the defendant with all of the medical reports that were in existence. Those reports were sufficient to put the defendant on notice that as of November 9, 1972, the plaintiff's injuries included traumatic arthritis and aseptic necrosis of the hip, a one-half inch shortening of the right leg, and a 50 percent disability of the hip which could conceivably get worse in the future. Aseptic necrosis of the hip means the death of the hip bone from the loss of

blood supply or corrosion. Webster, New International Dictionary (2d Ed.). On the record, we cannot say that the court abused its discretion in denying the motion.

On Tuesday morning, June 21, 1977, near the completion of the trial, defense counsel advised the court that he had been unable to reach his physician until Monday, June 20, 1977; and that the physician had advised him he could not do the examination until the following week. The defendant thereupon moved for a continuance of the trial until the following week. The court denied the motion.

A motion for a continuance during the course of a trial is directed to the sound discretion of the trial court and its ruling will not be overruled unless there has been a clear abuse of discretion. *State* v. *Manning,* 162 Conn. 112, 121, 291 A.2d 750. In denying the motion, the court noted that the defendant had been made aware from the medical reports that the plaintiff's hip disability was likely to increase; that during the trial it had been given the opportunity to have a medical examination, but now was requesting an additional eight days' continuance. The court then noted that it would be unfair to keep the jury waiting that long, particularly in view of the fact that the defendant's principal concern was the x-rays taken May 2, 1977, which were already in evidence without objection. We conclude that the court did not abuse its discretion in denying the continuance.

The defendant's final claim is directed to the court's action in granting the plaintiff's motion to amend the ad damnum clause. The allowance of an amendment more than thirty days after the return

day rests in the discretion of the court. Practice Book, 1963, § 132; Maltbie, Conn. App. Proc. § 63. This court will not interfere with the decision of the trial court to permit an amendment unless an abuse of discretion is clearly evident. *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 454, 352 A.2d 291; *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338; *Benson* v. *Morey,* 129 Conn. 390, 391, 28 A.2d 843. In determining whether there has been an abuse of discretion, much depends on the circumstances of each case. Factors to be considered include unreasonable delay, fairness to the opposing party, and the negligence of the party offering the amendment. *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884; *Antonofsky* v. *Goldberg,* supra; *Rusch* v. *Cox,* 130 Conn. 26, 32, 31 A.2d 457. On the facts of the present case, there was no abuse of discretion in granting the motion to amend.

There is no error.

In this opinion the other judges concurred.

