## ADELEINE DREIER *v.* THE UPJOHN COMPANY ET AL.
## (11529)

PARSKEY, SHEA, DANNEHY, KLINE and BRENNAN, Js.

Argued February 15—decision released May 14, 1985

*Peter A. Kelly,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom was *Garie J. Mulcahey,* for the appellee (defendant Vincent Pepe).

SHEA, J. In this medical malpractice action, a verdict was returned and judgment was rendered in favor of the defendant, Vincent Pepe, M.D. The plaintiff claims that the judgment should be vacated because the

trial court erred in allowing the defendant to introduce as admissions portions of a superseded pleading containing allegations against the named defendant, the Upjohn Company, and in failing to declare a mistrial based on the plaintiff's charge of witness tampering by the defendant. We find no error and affirm the judgment.

From the evidence the jury could have reasonably found the following facts: On January 31, 1973, the defendant performed a hysterectomy on the plaintiff. As part of the post-operative care, the defendant prescribed the antibiotic cleocin to prevent vaginal infection. After the operation the plaintiff began to suffer gastrointestinal and urinary distress that continued after her release from the hospital on February 6, 1973. The defendant recommended the further use of cleocin and other medication. When her condition did not improve, the plaintiff eventually consulted another physician, who took her off cleocin and prescribed different antibiotics. The plaintiff was readmitted to the hospital on March 4, 1973, and experienced substantially unpleasant symptoms and underwent treatment that need not be described. She was released from the hospital on March 18, 1973, but continued to suffer bladder and urinary problems for some time thereafter. The plaintiff was treated for such problems on several occasions between 1978 and 1979 by Frank Troncale, a gastroenterologist.

The plaintiff initially brought suit against Pepe and the Upjohn Company, claiming that her injuries were caused by the drug cleocin, that Upjohn had marketed this defective drug and had failed to warn or inform prescribing physicians of the destructive side effects of the medication. She also alleged that Pepe had failed to make proper tests to determine whether cleocin was the correct antibiotic to prescribe under the circumstances and to heed the manufacturer's warnings about

the antibiotic. The plaintiff filed an amended complaint on May 13, 1982, in which she withdrew her claim against the Upjohn Company. The defendant Pepe denied the allegations of negligence, and the case went to trial. At trial Pepe was permitted to introduce the original complaint containing, inter alia, the allegations that Upjohn had failed to warn or inform prescribing physicians of the destructive side effects of cleocin. In addition, Pepe contacted Troncale sometime during trial, and Troncale, who had been named as an expert witness for the plaintiff, declined to testify in this matter. The trial court accepted the jury's verdict for the defendant.

## I

In her first claim of error, the plaintiff complains that the trial court erred in admitting the original complaint and instructing the jury that the allegations contained therein were "judicial admissions" that were "not in themselves conclusive," but whose weight was "to be determined by you the jury the same as any other evidence offered at this trial." The plaintiff claims that the allegations against Upjohn in the original complaint were not admissions and should have been excluded. We disagree.

There is an abundance of precedent contrary to the plaintiff's assertions. "As we have recently reiterated, statements in complaints against parties subsequently withdrawn from a cause of action are admissible as evidence . . . ." *Oberempt* v. *Egri,* 176 Conn. 652, 655, 410 A.2d 482 (1979). This statement is but a corollary of the rule we have consistently followed under which statements in withdrawn or superseded pleadings, including complaints, may be considered as evidential admissions by the party making them, just as would any extrajudicial statements of the same import. See, e.g., *DiFederico* v. *McNamara,* 181 Conn. 54, 55, 434

A.2d 320 (1980); *Oberempt* v. *Egri,* supra, 655; *Schenck* v. *Pelkey,* 176 Conn. 245, 248, 405 A.2d 665 (1978); *Brockett* v. *Jensen,* 154 Conn. 328, 336, 225 A.2d 190 (1966); *Connecticut Bank & Trust Co.* v. *Rivkin,* 150 Conn. 618, 622, 192 A.2d 539 (1963); *Cramer* v. *Kolodney & Meyers, Inc.,* 129 Conn. 468, 472, 29 A.2d 579 (1942); *Nichols* v. *Nichols,* 126 Conn. 614, 620, 13 A.2d 591 (1940); *Theron Ford Co.* v. *Dudley,* 104 Conn. 519, 525, 133 A. 746 (1926); *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 350, 71 A. 358 (1908).

The plaintiff's brief appears to recognize that the weight of authority is against her. The sources relied upon in the brief raise two questions with respect to that authority: first, whether the rule as broadly formulated under our law has any rational application under modern pleading practice; and second, whether the rule, if found to be of continuing vitality, applies to the type of allegations at issue here.

Under our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint. Practice Book §§ 94, 137; *Veits* v. *Hartford,* 134 Conn. 428, 434–35, 58 A.2d 389 (1948). The plaintiff's brief alludes to a line of cases which hold that this type of liberal pleading policy would be frustrated were the pleader subjected to the risk that anything he pleads will be held against him even if he withdraws or abandons it. These cases, therefore, conclude that a withdrawn or superseded statement in one of two alternative claims may not be used as an admission in the trial of the other. See *Continental Ins. Co. of New York* v. *Sherman,* 439 F.2d 1294, 1298–99 (5th Cir. 1971); *Giannone* v. *United States Steel Corporation,* 238 F.2d 544, 547–48 (3d Cir. 1956); *Trans Western Leasing Corporation* v. *Corrao Construction Co.,* 98 Nev. 445, 448–49, 652 P.2d 1181 (1982); McCormick, Evidence (2d Ed. 1972) § 265, p. 634.

We do not believe that the policy supporting the liberal pleading rules controlling in this jurisdiction requires any such limitation on the use of superseded or abandoned pleadings as evidence of admissions contained therein. While alternative and inconsistent pleading is permitted, it would be an abuse of such permission for a plaintiff to make an assertion in a complaint that he does not reasonably believe to be the truth. See Practice Book § 111. Our pleading rules were designed to avoid the pitfalls of unnecessary formality, not to allow a plaintiff to engage in fantasy. "Our laws formerly cast on the plaintiff the duty of construing his rights with respect to the form in which they ought to be brought before the court, and the relief to which he might be entitled, at the risk of losing everything if he mistook his remedy. The Practice Act enables him, in a case like the present, to throw this duty of construction upon the court. It is enough for him to tell his story as plainly and concisely as may be, and to state the different kinds of relief, one of which he thinks he may fairly claim." *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 564, 29 A. 76 (1893); cf. Fed. R. Civ. Proc., rule 11 (requiring that a pleading be filed only if "it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . . . ").

Even those cases which support the plaintiff's position recognize that the superseded allegations have some probative value, for those cases allow the use of superseded or abandoned pleadings as admissions with regard to the specific claim in which they were made. The pleadings are barred from collateral claims not because they are not probative, but because the courts believe they tend to frustrate the practice of alternative and inconsistent pleading. See *Trans Western Leasing Corporation* v. *Corrao Construction Co.,* supra,

448. Given that the statements have some probative value, we believe that the circumstances under which they are made, as with any other "admission," go to the weight to be accorded the statements rather than their admissibility. *Stitham* v. *LeWare,* 134 Conn. 681, 684, 60 A.2d 658 (1948); see also *Toffolon* v. *Avon,* 173 Conn. 525, 537, 378 A.2d 580 (1977); *Bogart* v. *Tucker,* 164 Conn. 277, 281, 320 A.2d 803 (1973); *Perrelli* v. *Savas,* 115 Conn. 42, 43–44, 160 A. 311 (1932). The fact that statements in a pleading may be made before discovery at a time when the plaintiff is uncertain as to the truth is a circumstance that may be explained to the trier when the superseded pleading is admitted.[1] *Kucza* v. *Stone,* 155 Conn. 194, 197–98, 230 A.2d 559 (1967); *Berger* v. *Guilford,* 136 Conn. 71, 83, 68 A.2d 371 (1949). To exclude admissions contained in earlier pleadings would make the filing of a complaint in our procedure serve merely as notice of an intent to investigate the cause of an injury rather than as "a plain and concise statement of the material facts on which the pleader relies" to invoke the court's jurisdiction. Practice Book §§ 108, 131. Such a result would extend the effect of our liberal pleading rules far beyond the policy supporting them.

In sum, we continue to believe that "[t]he rule concerning the admissibility into evidence of admissions

---

[1] When an admission contained in a superseded pleading is used to impeach a party's in-court testimony, the party will normally have the opportunity during either cross or redirect examination to explain the circumstances under which the admission was made and thereby assist the jury in placing the proper weight on the admission. See, e.g., *Kucza* v. *Stone,* 155 Conn. 194, 197–98, 230 A.2d 559 (1967). In this case, however, the defendant was permitted to introduce the superseded complaint at the close of his case, rather than in the context of the plaintiff's testimony. While this procedure is less common than direct impeachment, it does not amount to error under our case law. Cf. *DiFederico* v. *McNamara,* 181 Conn. 54, 55, 434 A.2d 320 (1980). Even in such instances, however, the impeached party must be given an opportunity to explain the admissions in the superseded pleading. The plaintiff in this case never attempted to do so, though she did present rebuttal witnesses on other issues.

in pleadings is too well established in law and sound in reason to be modified as the plaintiff urges. The time has passed when allegations in a pleading will be treated as mere fictions, rather than 'as statements of the real issues in the cause and hence as admissions of the parties.' 2 Jones, Evidence (5th Ed.), p. 693; see also 4 Wigmore, Evidence (3d Ed.) § 1066, pp. 52–54." *Tough* v. *Ives,* 162 Conn. 274, 283, 294 A.2d 67 (1972).

Assuming the continued viability of the rule construing allegations in superseded or abandoned pleadings as admissions, the plaintiff argues further that the rule does not apply to allegations of the nature here involved. She argues that only factual allegations rather than legal conclusions fall within the rule of admissibility we have just articulated and that her withdrawn allegation of negligence against Upjohn was of the conclusory rather than factual variety.

It is apparent from the cases cited in her brief that the plaintiff has confused the evidentiary rules applicable to current as opposed to superseded or abandoned pleadings. Factual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. Tait & LaPlante, Handbook of Conn. Evidence (1976) § 6.7 (a), p. 75. Admissions of a conclusory nature are not necessarily determinative, however, as a court may be justified in deviating from any such admission if unsupported by the underlying facts in evidence. *Farley-Harvey Co.* v. *Madden,* 105 Conn. 679, 684, 136 A. 586 (1927); see also *Pyne* v. *New Haven,* 177 Conn. 456, 464–65, 418 A.2d 899 (1979); *Peiter* v. *Degenring,* 136 Conn. 331, 337–40, 71 A.2d 87 (1949). The fact that some conclusory judicial admissions may not be binding has no impact on the *admissibility* of evidential admissions of a conclusory nature.[2] There

---

[2] Both parties recognize that, while the trial court used the term "judicial admission" in the charge to the jury, its instruction can be fairly con-

is no reason to treat admissions based on superseded or withdrawn pleadings differently from evidential admissions derived from other sources. An evidential admission, regardless of its source, is not rendered inadmissible because the subject of the admission is not based on the personal knowledge of the party or because it is a legal or factual conclusion that the party may not be qualified as an expert to make. McCormick, Evidence (2d Ed. 1972) §§ 263, 264, pp. 631–33; cf. *Falker* v. *Samperi,* 190 Conn. 412, 425–26, 461 A.2d 681 (1983). Like the tendency initially to plead more broadly than the available proof, these considerations go to the weight of the admission, not its admissibility into evidence.[3]

---

strued only as allowing the jury to treat the statements as evidential admissions. "If a party . . . unequivocally concedes a fact, such concession for the purposes of the trial, has the force of a judicial admission, and a party is bound thereby unless the court, in its reasonable discretion, allows the concession to be later withdrawn, explained, or modified, if it appears to have been made by improvidence or mistake. *State* v. *Marx,* 78 Conn. 18, 27, 60 Atl. 690 [1905]; *State* v. *Chapman,* 103 Conn. 453, 478, 130 Atl. 899 [1925]. Unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, the testimony of a party to a fact is ordinarily no more conclusive upon him than the evidence given by any other witness; and it is the duty of the court or jury to determine the fact not alone from the testimony given by the party but from all the evidence in the case." *Kanopka* v. *Kanopka,* 113 Conn. 30, 39, 154 A. 144 (1931). In instructing the jury that the admissions at issue here were not "conclusive" but rather were to be treated as any other evidence, the court treated the withdrawn allegations as having only the force of evidentiary rather than judicial admissions.

[3] The plaintiff's reliance on the case of *Baker* v. *Paradiso,* 117 Conn. 539, 169 A. 172 (1933), is misplaced. In *Baker,* we found that a portion of an answer denying an allegation of negligence in the complaint should not have been admitted into evidence where a substituted answer later admitted that allegation. Our discussion in no way limited our practice of construing statements in pleadings as admissions. The facts admitted by the substituted answer were uncontestable under that pleading without modification. See footnote 2, supra. The previous denial, offered for unknown reasons by the plaintiff, simply was irrelevant to the triable issues under the current pleadings and was not of the character of an admission. The defendant's trial position "admitted" the plaintiff's allegation; it made no sense under the circumstances to bring before the jury the fact that he had previously denied that which he had judicially admitted at trial.

We conclude that there was no error in admitting the superseded complaint to show the admissions of the plaintiff regarding the adequacy of the manufacturer's warnings accompanying the antibiotic cleocin.

## II

In her second claim of error, the plaintiff contends that the trial court erred in refusing to declare a mistrial because of alleged witness tampering by the defendant Pepe. Pepe gave testimony in the absence of the jury that his brother-in-law, Ulysses Golia, an anesthesiologist, offered to call Troncale, the gastroenterologist who had treated the plaintiff and who was acquainted with Golia, to discuss Troncale's upcoming court appearance in this case. Golia reported back to Pepe that Troncale was an honest and credible individual and that Troncale would not be averse to a telephone call from Pepe or his attorney. Pepe proceeded to call Troncale, and they discussed the incidents leading to this suit. The defendant testified that Troncale began to express a disinterest in testifying on this matter, to which the defendant responded by pleading with Troncale to come and tell the truth.[4] In argument on her motion to set aside the verdict, the plaintiff's counsel stated that Troncale indicated on the afternoon of his conversation with Pepe that he was no longer interested in testifying, but that he would reconsider after reading the hospital records concerning Pepe's conduct. Thereafter Troncale refused to answer telephone calls

---

[4] Pepe gave the following account of his conversation with Troncale during the voir dire examination: "I read him the complete note, the findings, and what were (sic) their—the findings and also read him the path report, and informed him that there was no evidence of ulcers. As a matter of fact, the chart revealed that the many stools were negative for blood, and he was quite surprised to find that she had no bloody diarrhea, so he said, 'Well, I am not really interested in coming or testifying. I owe [plaintiff's counsel] Skolnick nothing,' but I said, 'Look, you know, all I am asking you is come and tell the truth, and as a matter of fact, I—please come and tell the truth as you see it.' I begged him to do it."

of the plaintiff's attorney. The plaintiff did not sub-
poena Troncale to obtain either his medical opinion or
his version of Pepe's telephone call. Troncale did not
testify at trial.

Except where the integrity of the administration of
justice demands, there are generally no restraints
placed upon the parties to a suit with regard to the per-
sons to whom they may speak. The plaintiff has failed
to show that any of the exceptions to the general rule
allowing communications by parties to a suit were impli-
cated in this case. Cf. General Statutes § 53a-151; Code
of Professional Responsibility, EC 7-18. The mere fact
that after Pepe spoke with him over the telephone
Troncale, who was never subpoenaed, became reluc-
tant to testify does not in itself require an inference
of misconduct sufficient to necessitate granting the
plaintiff's motion for a mistrial. Pepe's explanation of
the events, that Troncale was unaware of the contents
of the hospital file before their conversation, resulting
in his subsequent request to plaintiff's counsel to see
them, and that it was his perusal of these records rather
than anything Pepe said that changed his mind, could
reasonably have been accepted by the court as more
probable than the claim of misconduct the plaintiff put
forward. " 'The general principle is that a mistrial
should be granted only as a result of some occurrence
upon the trial of such a character that it is apparent
to the court that because of it a party cannot have a
fair trial and the whole proceedings are vitiated.'
*Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433
[1947]. The granting of such a motion rests largely in
the discretion of the trial court. *State* v. *Williamson,*
134 Conn. 203, 204, 56 A.2d 460 [1947]." *Teitelman*
v. *Bloomstein,* 155 Conn. 653, 662, 236 A.2d 900 (1967);
see also *Allen* v. *Pathmark of Bridgeport, Inc.,* 176
Conn. 124, 129, 405 A.2d 59 (1978). The plaintiff does
not claim that Troncale was a witness of such impor-

tance that his mere unanticipated absence, without any fault of the defendant, would require a mistrial. See *Izzo* v. *Crowley,* 157 Conn. 561, 254 A.2d 904 (1969).[5] Nor does the testimony given in the absence of the jury establish any misconduct on the part of Pepe. The plaintiff had an opportunity to subpoena Troncale, for his version of the telephone conversation with Pepe and also for his medical testimony, but she did not. "One who fails to acquire testimony by legally available means does so at his peril." *Teitelman* v. *Bloomstein,* supra, 662. Our speculation concerning the content of evidence that the plaintiff failed to produce cannot support her motion for a mistrial. The record does not support the plaintiff's claim that she was denied a fair trial, and the trial court did not err in refusing to order a mistrial.

There is no error.

In this opinion the other judges concurred.

---

[5] In fact the plaintiff never indicated the nature of Troncale's anticipated testimony other than by describing Troncale as the plaintiff's treating physician five or six years after the incident in question. The absence of Troncale did not fully deprive the plaintiff of the expert testimony that may have been essential to her case. The plaintiff was able to present the testimony of Howard Spiro, chief of gastroenterology at Yale New Haven Hospital and a professor at Yale Medical School, who testified that the plaintiff's postoperative complications were caused by the antibiotic cleocin. Malcolm Brochin, a practicing obsterical and gynecological surgeon and associate clinical professor at Yale Medical School, testified that cleocin should not have been prescribed by the defendant and cast doubt upon the necessity for the hysterectomy that initiated the plaintiff's difficulties. The plaintiff also produced the testimony of Joseph Misuk, the physician who discontinued the use of cleocin during the postoperative period.