[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS TO SET ASIDE VERDICT FOR JUDGMENT IN ACCORDANCE WITH DIRECTED VERDICT MOTION, AND FOR REMITTITUR/SETOFF (#308, 310-12)
At the conclusion of a protracted trial which began with the taking of evidence on April 3, 1991, a jury of six, on May 16, returned a plaintiffs' verdict against both defendants and awarded damages of $1,000,000 to the plaintiffs in their capacity as co-administrators of the estate of their daughter, Marcia Walker. Miss Walker died on July 23, 1986, at age 25. By its verdict, the jury found that the plaintiffs' decedent's death was wrongfully caused by the medical malpractice of the co-defendant physicians, Brian Peck and Craig W. Czarsty.
The defendant-Peck has filed a motion to set aside the verdict and a motion for remitter (sic).
The defendant-Czarsty has filed a motion to set aside the verdict, a motion for judgment in accordance with his motion for directed verdict and a motion for remittitur/setoff.
 A.
The bases of the defendant-Peck's motion to set aside, insofar as errors in law by the court, are as follows:
1. It is claimed that the court erred in allowing Dr. Robert Sadock, a specialist in internal medicine who was called by the defendant-Czarsty, to testify on cross-examination by the plaintiffs regarding a breach of the standard of care by Dr. Peck, a specialist in the same field. It is also claimed that in their cross-examination of the witness, the plaintiffs violated the requirements of Section 220(D) of the Practice Book. Although much of the witness' testimony concerned the conduct of Dr. Czarsty, a specialist in family medicine, Sadock testified on direct examination that the standard of care applicable to lung disease, as here, is the same for the internist and the family CT Page 6286 practitioner, with the understanding that the internist has "a greater depth of knowledge."
Cross-examination of the witness did not exceed permissible bounds. The scope thereof is determined by all of the evidence offered during direct examination. Merrill, Lynch, Pierce, Fenner Smith, Inc. v. Cole, 189 Conn. 518, 525 (1983). Under the circumstances, the court did not abuse its liberal discretion. Akers v. Singer, 158 Conn. 29, 36 (1969).
Dr. Sadock was not a plaintiffs' witness, but rather a witness for an adverse party. The disclosure requirements of Section 220(D) of the Practice Book were inapplicable to the plaintiffs' cross-examination, the full extent of which the plaintiffs could not have anticipated before the witness' testimony on direct examination.
2. It is claimed that the court erred in failing to charge as requested on the issue of intervening cause.
The court charged on the issue as it related to a potential, albeit remote, cause of the decedent's death independent of the alleged negligence of the defendants.
It is axiomatic that the charge must, inter alia, be adapted to the issues of the case and a sufficient guide for the jury. Steinecke v. Medalie, 139 Conn. 152, 157 (1952). The charge as requested was not so adapted. The defendant-Peck wished the jury to conclude that the intervention of a superseding cause (i.e., the negligence of Dr. Czarsty) should be determined by the recency of the events surrounding the cause, as opposed to all of the facts of the case. Witness his counsel's argument on the instant motion:
 "The Court: But apart from that, your claim is that because another doctor [Czarsty] had the more recent opportunity to address the plaintiff decedent's problems, that that's the intervening cause?
 Mr. Breen: Yes, because there was a substantially greater likelihood of success if treatment had begun five days earlier rather than on the 22nd, when she showed up in Doctor Peck's Office. . .I would claim factually that it was the last real opportunity for the patient to start having therapy to survive." CT Page 6287
As the court opined during the charge conference, the key issue of liability was whether the alleged negligence of the defendants, or either of them, was a substantial factor in causing the death of Miss Walker.[1]
3. It is claimed that the court should not have charged on the issue of future economic loss or loss of future earnings in the absence of testimony from an economic expert. The cases offered as authority; Kiniry v. Danbury Hospital, 183 Conn. 448
(1981), and Katsetos v. Nolan, 170 Conn. 637 (1976); do not support the proposition but, rather, suggest that such charge is proper, based on the relevant evidence.
The court's instruction was correctly tailored to the evidence presented.
4. It is claimed that the court erred in allowing the plaintiffs to file an amended complaint near the conclusion of their evidence in chief and in allowing that pleading to be marked as an exhibit.
The amendment merely added an allegation of damages about which evidence had already been received at some length. Besides such conformance, the amendment caused no delay in the trial and served the ends of justice as required. State ex rel. Scala v. Airport Commission, 154 Conn. 168, 178-79 (1966). It was not marked as an exhibit and was not submitted to the jury during deliberation.[2]
B.
The defendant-Czarsty cites ten errors in law by the court as bases for granting his motion to set aside. Although his counsel during oral argument asserted that all of the grounds are well-founded, he conceded his belief that "some of them are more important than others." The two claims which he placed in the "more important" category are as follows:
1. It is claimed that the court erred in denying the defendant's motion in limine. The motion was presented to the court during the plaintiffs' case in chief and after the testimony of one of the plaintiffs' medical experts. The purpose of the motion as stated in defendant's accompanying memorandum of law (p. 3) was "to prevent the presentation of duplicative and cumulative testimony, to avoid delay, and to avoid further waste of the Court's time, and the jury's time."
The decision whether, in the first instance, the court should entertain a motion in limine is a discretionary one. As a general proposition, the purpose of the motion is to "insulate the jury CT Page 6288 from exposure to harmful inadmissible evidence." McCormick, Evidence, 3d Ed., p. 128. A ruling excluding (or admitting) evidence claimed to be cumulative is also a discretionary one. Hydro-Centrifugals, Inc. v. Crawford Laundry Co., 110 Conn. 49,54-55 (1929); Fitzpatrick v. Cinitis, 107 Conn. 91, 98-99 (1927); State v. Lemoine, 6 Conn. App. 334, 338 (1986).
Contrary to the defendant's claim, the court's ruling allowing additional expert testimony was not based on the credibility (or lack thereof) of preceding testimony. As the court later instructed the jury, it is not the number of witnesses that is important, but rather "the quality and character of the evidence."
The fact that additional evidence offered tends to prove the same proposition or ground of claim (e.g., breach of the standard of care) does not make it cumulative in the first place. Waller v. Graves, 20 Conn. 305, 311 (1850); Reilly v. State,32 Conn. Sup. 349, 355 (1976). Nor does the fact that the evidence is of the same general character as previously received detract from its value in furnishing additional, and perhaps more unequivocal, grounds to enable the jury to resolve a critical issue of fact. See Anderson v. State, 43 Conn. 514, 519 (1876).
2. It is claimed that the court erred in admitting as an exhibit (Pl. Exh. 51) a copy of the entire amended complaint, dated June 27, 1988. The ruling was made in the fact of objection by both defendants during the plaintiffs' rebuttal.
In counsel's memorandum of law and during oral argument on the instant motion, it was claimed that the pleading was allowed "as substantive evidence supporting the allegations against [the defendant-Czarsty]." The claim has no basis in fact.
During the presentation of his defense, the defendant-Peck's counsel offered a copy of an excised version of the above described complaint. Over objection, the complaint, as excised, was admitted (Def. Peck's Exh. 4) as an evidential admission. See e.g., Dreier v. Upjohn Co., 196 Conn. 242, 244-45 (1985). The exhibit contained only those counts directed at the former defendants against whom the plaintiffs had withdrawn their complaint.
To deny the plaintiffs later offer and permit into evidence only the excised complaint created a potential risk of confusion.[3]
That the court allowed "one single document" to be "split into parts" and admitted; Kucza v. Stone, 155 Conn. 194, 197 (1967); did not preclude the court from later allowing the complete document to be received in order to minimize such potential. CT Page 6289
The defendant did not request an instruction directed at limiting the jury's consideration of the full complaint, and, in point of fact, the court instructed the jury that the pleadings "are not evidence in the case and in and of themselves they prove nothing."
3. Except for his claim that the verdict was excessive, the defendant's remaining claims of error are the same as or similar to those raised by the co-defendant Peck and addressed herein, or involve matters considered, and ruled upon, by the court during trial or discussed fully during the charge conference. Practice Book, Section 318A. C.
Both defendants have moved to set aside the verdict as being excessive.
At the time of her death, Miss Walker was single, engaged to be married, and living with her parents. Prior to her final illness she had enjoyed good health. Mortality tables reflected that an average person of her age and gender could expect to live an additional 55 years. She experienced considerable pain and suffering during the last several weeks of her life. Prior to her death she was a seven year employee of the State of Connecticut, working in a supervisory position with the mentally retarded at the Southbury Training School. Her federal income tax return for the year preceding her death (Pl. Exh. 50b) reflected taxable income of $24,000. Her personal living expenses were relatively low. She was described by here mother as a happy person who enjoyed living, and she had a variety of outside interests.
The plaintiffs received $100,000 in consideration of a settlement before trial of their claim against Dr. Allen Stahl, a co-defendant named in the original complaint.
"[T]he problem of estimating damages for the loss of. . .life with any exactness is. . .one beset with insurmountable difficulties. The law, nevertheless, undertakes to do justice as best it can, although of necessity crudely. The solution of the problem is left to the trier's good judgment." Fairbanks v. State, 143 Conn. 653, 661 (1956). The jury's award, on the evidence presented, is not so large as to offend the sense of justice or to compel a conclusion that it (the jury) was improperly influenced. Champagne v. Raybestos-Manhattan, Inc.,212 Conn. 509, 556-57 (1989).
The court finds as a matter of law that the jury's award of damages is not excessive. In making its finding the court has considered the pre-trial settlement payment to the plaintiffs. Section 52-216a, Connecticut General Statutes; Peck v. Jacquemin, CT Page 6290196 Conn. 53, 71 (1985).
 D.
The defendants' motions to set aside the verdict, for remittitur/setoff, and for judgment in accordance with directed verdict motion are denied.
Judgment may enter in accordance with the jury's verdict.
GAFFNEY, J.