[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution of marriage was brought by the plaintiff, Antionette C. Funaioli (hereinafter "Antionette"), against the defendant, Raymond Funaioli (hereinafter "Raymond").
Consolidated with this matter is a separate action wherein Louis G. Funaioli, Raymond's father (hereinafter "Louis"), seeks, inter alia, a decree establishing a life use in favor of Louis in the family home jointly owned by Antionette and Raymond.
Antionette and Raymond were married on July 5, 1983 in New London, Connecticut. There is one minor child issue of this marriage, Brenton Funaioli, born July 20, 1986.
The court finds that the marriage has broken down irretrievably and the same is hereby dissolved.
In approximately 1979 Raymond and Antionette moved into the CT Page 7156 home of Louis and his wife. Louis' wife passed away in 1980 and thereafter Raymond, Antionette and Louis continued to reside together.
In 1982 Raymond and Louis purchased property known as 662 Williams Street, New London, Connecticut, for $30,000, putting only $100 down.
The property was in poor condition when purchased and over the years it has been substantially improved. Much of the physical work was performed by Raymond and Louis and friends who assisted them. Some of the work was done by Antionette.
The cost of the improvements came from subsequent refinancing of the property and the sum of $7000 contributed by Louis. Over the years Raymond, Antionette and Louis have contributed their earnings to the household expenses.
On June 23, 1983 Louis quitclaimed his interest in this property to Raymond and on September 30, 1985 Raymond quitclaimed the property to himself and Antionette as tenants in common. Neither deed reserved a life use in Louis.
Raymond, Antionette, Louis and the minor child all resided together in the family home until September or October of 1989, at which time Antionette moved into an apartment of her own.
Raymond and Antionette are both police officers with the New London Police Department. They change their shifts every twenty-eight days with Raymond's shift following Antionette's shift. The three shifts are 7:00 A.M. to 3:00 P.M., 3:00 P.M. to 11:00 P.M., and 11:00 P.M. to 7:00 A.M. They each work five days and have the next two days off. Antionette's two days off follow Raymond's two days off.
Louis is a retired baker who has recently been working part time but is willing to give that up at any time.
One of the major issues in this matter involves the custody of the minor child. Antionette seeks sole custody, Raymond seeks joint custody[1] and Louis seeks rights of visitation. Both the attorney for the minor child and the Family Relations Counselor who conducted the court-ordered study recommend that sole custody be granted to Antionette.
After a thorough review of all of the evidence presented to the court and considering what would be in the best interest of the minor child, the following order shall enter:
Antionette shall have sole custody of the minor child subject CT Page 7157 to visitation with Raymond as follows:
(a) When Antionette is working the 7:00 A.M. to 3:00 P.M. shift, the minor child shall be with Raymond each week on his two days off, commencing when school lets out on his first day off, or 9:00 A.M. on that day if there is no school, and ending at the commencement of school on the day Raymond returns to work, or at 3:00 P.M. on that day if there is no school.
(b) When Antionette is working the 3:00 P.M. to 11:00 P.M. shift, the minor child shall be with Raymond at all times except each week on Antionette's two days off, commencing and ending at the same times as specified in (a) above.
(c) When Antionette is working the 11:00 P.M. to 7:00 A.M. shift, the minor child shall be with Raymond on his two days off, commencing on his last day of work at 5:00 P.M. and ending at the commencement of the school day on the day Raymond returns to work, or at 3:00 P.M. on that day if there is no school.
(d) Two consecutive weeks during the summer school recess provided Raymond gives Antionette at least 30 days prior notice of the weeks he has selected.
(e) Such other and further times as the parties mutually agree.
Major holidays shall be shared as follows:
(a) Labor day 1991 with Antionette.
(b) Thanksgiving Day 1991 with Raymond.
(c) Christmas Eve 1991 with Antionette.
(d) Christmas Day 1991 with Raymond.
(e) New Years Day 1992 with Antionette.
(f) Easter Sunday 1992 with Raymond.
(g) Memorial Day 1992 with Antionette.
(h) Fourth of July 1992 with Raymond.
Thereafter, Antionette and Raymond shall annually alternate these holidays.
These custody and visitation orders shall be subject to the following: CT Page 7158
(a) Raymond shall have access to the academic, medical, hospital or other health records of the minor child as provided in46b-56 (e) of the Connecticut General Statutes.
(b) Each party (including Louis) shall have reasonable telephone access with the minor child when the child is with the other party.
(c) Neither party shall relocate the place where the child will be residing with them to a place outside of the City of New London without giving the other party at least 90 days prior written notice so that the issue of whether these orders should be modified can be submitted to this court, at the request of either party.
(d) In the event Antionette and Raymond mutually agree to adjust the time of day of the transfer of the minor child between Antionette and Raymond, they may do so without further order of this court.
(e) The court is not entering any specific order of visitation for the intervening defendant, Louis, as he and Raymond live in the same household and he will be able to have access to the child for the times that the child is with Raymond.
(f) Routine day-to-day decisions regarding the minor child and any decision involving a medical emergency shall be made by Raymond when the child is physically residing with him.
(g) The child shall spend his birthday with the parent with whom he is scheduled to be with pursuant to the visitation schedule, provided, however, that the other parent shall have reasonable contact with the child on that day in order to give gifts and good wishes.
(h) Notwithstanding the visitation schedule herein contained, the child shall be with Antionette on Mother's Day and with Raymond on Father's Day.
As to the consolidated action seeking to establish a life use in favor of Louis in the family home jointly owned by Antionette and Raymond, the court finds for the defendants on all three counts.
Although Raymond has admitted all of the allegations of Louis' complaint, the court is not bound by admissions of matters of a conclusory nature. Dreier v. Upjohn Co., 196 Conn. 242, 248
(1985). CT Page 7159
Antionette, in her answer to Louis' complaint, raises the statute of frauds as a special defense and has filed an excellent memorandum of law discussing this defense. It is not necessary, however, for the court to address this issue as it is the opinion of this court that Louis has failed to establish his claim by a preponderance of the evidence. The court does not find that either Antionette or Raymond intended or agreed that Louis would have a life use in the premises known as 622 Williams Street, New London, Connecticut.
It may be' that Raymond promised Louis that he would always have a place to live, but that falls far short of the reservation of a life use in a specific piece of real property.
In regard to the principal marital assets, the court finds them to have the following values as of the date hereof:
 (a) 662 Williams Street New London, Connecticut Fair Market Value $ 115,000.00 Less Mortgages 97,000.00 ------------ Equity $ 18,000.00
 (b) Smuggler's Notch Time Share Fair Market Value $ 22,700.00 Less Mortgage 6,750.00 ----------- Equity $ 15,950.00
 (c) Raymond's contribution to the Police Employee's Pension Plan $ 14,850.24
 (d) Antionette's contribution to the Police Employee's Pension Plan $ 6,244.12
In addition, the court has taken into consideration all of the criteria of 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes, and further orders as follows:
(1) All of the right, title and interest of Antionette in and to the real property known as 622 Williams Street, New London, Connecticut, is hereby assigned to Raymond subject to such encumbrances as of record appear, which encumbrances shall be the sole obligation of Raymond and he shall indemnify and hold Antionette harmless therefrom.
(2) All of the right, title and interest of Raymond in and to CT Page 7160 the Smuggler's Notch Time Share is hereby assigned to Antionette subject to such encumbrances as of record appear, which encumbrances shall be the sole obligation of Antionette and she shall indemnify and hold Raymond harmless therefrom. Raymond shall forthwith sign any and all documents that may be necessary to effect this transfer.
(3) By way of a property assignment pursuant to 46b-81 of the Connecticut General Statutes, Raymond shall pay to Antionette the sum of $8000. Said sum shall be paid as follows:
 (a) The sum of $3000 within 60 days of the date hereof and the balance of $5000 within one year from the date hereof. To secure the payment of said sum, Antionette shall have a security interest in the premises referred to in paragraph 1 hereof.
(4) Neither party shall pay alimony to the other.
(5) Raymond shall pay to Antionette the sum of $60 per week for the support of the minor child until such child reaches the age of majority or is sooner emancipated. This order shall be subject to an immediate wage withholding. This order deviates substantially from the child support guidelines because of the amount of time that the child will be physically residing with Raymond.
(6) Each party shall be responsible for one-half of the parochial school tuition for the minor child.
(7) Both parties shall maintain all health insurance available to them through their employment for the benefit of the minor child. In the alternative, the parties may elect to cover the child under only one such policy in which event they shall each pay one-half of any premium attributable to the coverage for the child.
In addition, all uninsured medical, dental, orthodontic, ophthalmic, psychological and psychiatric expenses incurred on behalf of the minor child shall be paid equally by Antionette and Raymond; provided, however, that except in the case of an emergency no such expense for which Raymond might be liable shall be incurred without his prior consent, which consent shall not be unreasonably withheld. This order shall be subject to 46b-84 (c) of the Connecticut General Statutes.
(8) Both parties shall name the minor child as beneficiary of any life insurance that may be available to them through their employment. CT Page 7161
(9) All, of the contents of the premises referred to in paragraph 1 hereof shall be the sole property of Raymond, except for the following which shall forthwith be turned over to Antionette.
(a) the smoker grill;
(b) one patio table and chair set;
(c) Brenton's wagon;
(d) The sewing machine case;
(e) the playpen;
(f) the bassinet;
(g) the Santa Claus candle;
(h) the Kerosene heater;
(i) Brenton's skis and boots;
(j) the camcorder;
(k) the butcher block.
(10) All of the contents of the Smuggler's Notch time share shall be the sole and exclusive property of Antionette.
(11) If the one-half dime is in the possession of Antionette she will forthwith return it to Raymond.
(12) Ellen S. Giannini, the attorney for the minor child, is awarded attorney's fees in the amount of $6000, the same to be paid equally by Antionette and Raymond, with each getting credit for any sums paid to date. Said fees shall be payable in full within four months of the date hereof.
(13) Raymond shall be responsible for and hold Antionette harmless from the debt to Happy Days School in the amount of $700.
(15) Except as expressly provided herein, all of the liabilities shown on the financial affidavits of the parties filed with this court on July 10, 1991 shall be the sole obligation of the party upon whose affidavit said liability appears, and they shall indemnify and hold the other party harmless therefrom.
(16) Except as expressly provided herein, all of the property CT Page 7162 shown on the financial affidavits of the parties filed with this court on July 10, 1991 shall be the sole and exclusive property of the party upon whose affidavit such property appears.
(17) Each party shall be responsible for his or her attorney's fees and costs incurred in this action.
Frederick A. Freedman, Judge.
FOOTNOTE