CONSTANCE DANKO ET AL. *v.* REDWAY
ENTERPRISES, INC., ET AL.
(SC 16150)

Borden, Katz, Palmer, Sullivan and Vertefeuille, Js.

Argued February 18—officially released August 22, 2000

*Joshua D. Koskoff,* for the appellants-appellees (plaintiffs).

*Eric P. Smith,* with whom, on the brief, was *Donn A. Swift,* for the appellee-appellant (named defendant).

*Opinion*

PALMER, J. This certified appeal from the judgment of the Appellate Court raises two principal issues: (1) whether, as a general rule, statements made in a stricken pleading are admissible as evidential admissions of the party who pleaded them; and (2) if so, whether statements in a stricken apportionment complaint are subject to that general rule. We answer each of these questions in the affirmative. Accordingly, we reverse the judgment of the Appellate Court.

The relevant facts and procedural history are set forth in the opinion of the Appellate Court. "On September 18, 1993, [the named plaintiff] Constance Danko[1] sustained an injury during a wedding reception at the Red House of Johnsonville, Inc. (Red House). She claimed that the injury was caused by a defective dance floor. By an amended complaint, the plaintiffs brought suit against Red House, Redway [Enterprises, Inc., the named defendant (defendant)], from which the dance floor had been rented, Culinary Concepts, LLC (Culinary Concepts), which had rented the dance floor from [the defendant], and Shelby Williams Industry, Inc. (Shelby), the manufacturer of the dance floor. The plaintiffs subsequently withdrew their claims against Red House, Culinary Concepts and Shelby.

"On July 7, 1997, pursuant to General Statutes § 52-102a, [the defendant] moved to implead Red House because 'it was a necessary party and should be made a defendant at this point because it has an interest in this controversy adverse to the plaintiffs . . . and its

---

[1] Stanley Danko, the named plaintiff's husband, is also a plaintiff.

presence as a[n] [apportionment] defendant is required so that a complete assessment of the percentage of responsibility of all parties can be made pursuant to [General Statutes] § 52-572h."[2] On August 11, 1997, the plaintiffs moved to strike [the defendant's] apportionment complaint,[3] and the trial court granted the plaintiffs' motion.

---

[2] "Because the plaintiffs initiated this lawsuit in February, 1995, Public Acts 1995, No. 95-111, § 1, [which] specifically deal[s] with apportionment complaints, [and] which [is] codified [at] General Statutes § 52-102b, does not govern this case. See Public Acts 1995, No. 95-111, § 2 ([act] effective July 1, 1995)." *Danko* v. *Redway Enterprises, Inc.*, 53 Conn. App. 373, 375 n.1, 730 A.2d 638 (1999).

[3] The defendant's apportionment complaint against Red House provides in relevant part:

"1. The [named] plaintiff . . . claims that she attended a wedding reception on or about September 18, 1993 at premises of . . . Red House . . . located in Moodus . . . .

"2. The [named] plaintiff . . . further claims that later that same evening she was dancing on a temporary dance floor installed at premises of . . . Red House when the heel of her shoe caught in a hole on the dance floor and she was caused to fall to the ground.

"3. The [named] plaintiff . . . further claims that the fall on the temporary dance floor occurred because of the dangerous condition of the dance floor.

"4. [Red House] . . . maintained, possessed and controlled its premises before, during and following the wedding reception.

"5. [Red House] . . . played an active role in the setup, condition and breakdown of the dance floor installed on its premises.

"6. The injuries claimed by the [named] plaintiff . . . were caused by the negligence of . . . Red House . . . in one or more of the following ways:

"(a) It failed to exercise reasonable caution in maintaining and controlling the condition of its premises;

"(b) it failed to exercise reasonable caution in controlling the setup, maintenance and breakdown of the dance floor installed on its premises;

"(c) it allowed the installation of an unreasonably dangerous dance floor on its premises;

"(d) it failed to properly maintain and inspect the dance floor; and

"(e) it knew or should have known the dance floor was in an unreasonably dangerous condition, yet failed to remedy the same within a reasonable period of time.

"7. As a result of the negligence of . . . Red House . . . the [named] plaintiff sustained a fracture of her left femoral neck.

"Wherefore, [the] [d]efendant . . . claims . . . [a]n apportionment of liability between [itself], if any, and . . . Red House . . . ."

"At trial, on direct examination, a witness for [the defendant], Albert Redway III,[4] testified that the dance floor was in a safe and usable condition prior to the time it was transported from [the defendant] to Red House. During . . . cross-examination of this witness, the plaintiffs sought to introduce into evidence certain statements [made by the defendant] in [its] stricken apportionment complaint, claiming that those statements constituted an admission by [the defendant] that the dance floor was in an unreasonably dangerous condition. Relying on [the] decision [of] *DeJesus* v. *Craftsman Machinery Co.*, 16 Conn. App. 558, 564–68, 548 A.2d 736 (1988), [in which the Appellate Court held that statements made in third party pleadings cannot be used by a plaintiff in the original action as admissions of the third party pleader] the trial court denied the plaintiffs' request. The plaintiffs claimed that the trial court's reliance on *DeJesus* was improper, and they renewed this claim in their motion to set aside the verdict. The trial court denied the plaintiffs' motion to set aside the verdict and [the plaintiffs appealed to the Appellate Court]." *Danko* v. *Redway Enterprises, Inc.*, 53 Conn. App. 373, 374–75, 730 A.2d 638 (1999).

On appeal, the Appellate Court first considered whether a statement in a stricken pleading may be considered an evidential admission, which, as the Appellate Court noted, the trial court assumed to be true for purposes of its ruling. Id., 375–76. After answering that question in the affirmative; id., 376; the Appellate Court then addressed whether the trial court properly had precluded the plaintiffs from using the defendant's statements in its stricken apportionment complaint as evidential admissions of the defendant. See generally id., 376–78. The Appellate Court determined that a statement in a stricken apportionment complaint is an excep-

[4] Although the defendant is incorporated, Albert Redway III testified that he "own[s]" the company.

tion to the general rule that statements in withdrawn or superseded pleadings may be considered as evidential admissions; id., 377; and, therefore, concluded that the trial court properly had precluded the plaintiffs from using the defendant's statements in its stricken apportionment complaint as evidential admissions. See id., 378. The Appellate Court thus affirmed the judgment of the trial court. Id.

We granted the plaintiffs' petition for certification to appeal, limited to the following two issues: "Did the Appellate Court properly conclude that: (1) statements made in a stricken pleading are admissible as evidential admissions of the party who pleaded them; and (2) an exception exists to the foregoing rule for statements made in an apportionment complaint?"[5] *Danko* v. *Redway Enterprises, Inc.*, 250 Conn. 902, 734 A.2d 980 (1999). Although we agree with the Appellate Court regarding the existence of the general rule, we disagree with its conclusion that statements made in a stricken apportionment complaint are not subject to that general rule. Because we conclude that it was not harmless error for the trial court to have precluded the plaintiffs from introducing into evidence the defendant's statements in its stricken apportionment complaint as evidential admissions of the defendant, we reverse the judgment of the Appellate Court.

I

We first must determine whether statements in stricken pleadings constitute evidential admissions of the parties making them. We conclude that they do.[6]

---

[5] We also granted the defendant's cross petition for certification to appeal; see *Danko* v. *Redway Enterprises, Inc.*, 250 Conn. 902, 734 A.2d 981 (1999); in order to consider the first of these two certified issues inasmuch as the Appellate Court's resolution of the first issue is favorable to the plaintiffs.

[6] The defendant asserts that we need not decide this issue or the second certified issue; see text accompanying footnote 5 of this opinion; because the statements contained in its stricken apportionment complaint are not admissions at all. In support of this assertion, the defendant contends that the statements in its stricken apportionment complaint "rested on a contin-

The Appellate Court concisely resolved this issue: "As a general rule statements in withdrawn or superseded pleadings, including complaints, may be considered as evidential admissions [of] the party making them, just as would any extrajudicial statements of the same import. *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 244, 492 A.2d 164 (1985). In *Theron Ford Co.* v. *Dudley*, 104 Conn. 519, 525, 133 A. 746 (1926), the trial court sustained a demurrer[7] . . . to a special defense in the defendant's pleading, and the plaintiff later sought to introduce into evidence as an admission a statement in the defendant's demurred pleading. [The] Supreme Court held that the plaintiff could have offered this statement into evidence. Id. In *Dreier* v. *Upjohn Co.*, supra, 245, [the] Supreme Court cited its decision in *Theron Ford Co.* as authority for the general rule that statements in withdrawn or superseded pleadings may be considered as

gent and hypothetical factual premise" and "were plainly intended not to concede either the fact or the causation of any injuries which the [named plaintiff] claimed to have suffered, but to allege that *if* the [named plaintiff was] injured, [her] injuries arose from the activities of Red House, and not from the activities of [the defendant]." (Emphasis in original.) The defendant's claim misperceives the nature of evidential admissions, which are admissible "just as . . . any extrajudicial statements of the same import [would be]." *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 244, 492 A.2d 164 (1985). "[S]tatements made out of court by a party-opponent are universally deemed admissible when offered against him . . . so long as they are relevant and material to issues in the case. . . . [T]he vast weight of authority, judicial, legislative, and scholarly, supports the admissibility without restriction of any statement of a party offered against that party at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 15, 629 A.2d 386 (1993). Thus, any relevant statement of a party opponent is admissible when "offered by the party who is the opponent to the party declarant"; *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 238, 654 A.2d 342 (1995); and "the statement . . . need not be against the declarant's interest either at the time the statement was made or at the time it is sought to be admitted into evidence." Id.

[7] "The purpose and scope of a motion to strike are identical to those of a demurrer under the old rules of practice." (Internal quotation marks omitted.) *Danko* v. *Redway Enterprises, Inc.*, supra, 53 Conn. App. 376 n.2, quoting *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 283, 449 A.2d 986 (1982).

evidential admissions. The decisions in *Theron Ford Co.* and *Dreier* together establish that a statement in a stricken pleading may be considered as an evidential admission." (Internal quotation marks omitted.) *Danko v. Redway Enterprises, Inc.*, supra, 53 Conn. App. 376.

Because we agree with the Appellate Court's analysis of the pertinent case law, we also agree with its conclusion that, as a general rule, statements in a stricken pleading are admissible as evidential admissions of the party making those statements.

## II

We turn next to the second issue presented by this appeal, namely, whether statements in a stricken apportionment complaint are subject to the general rule that statements in a stricken pleading may be admitted into evidence as evidential admissions of the party making them. We agree with the plaintiffs that, contrary to the determination of the Appellate Court, they were entitled to introduce into evidence the defendant's statements in its stricken apportionment complaint as evidential admissions of the defendant.

In concluding that the trial court properly had precluded the plaintiffs from using the defendant's statements in the stricken apportionment complaint, the Appellate Court relied on its holding in *DeJesus v. Craftsman Machinery Co.*, supra, 16 Conn. App. 565, that statements in third party pleadings are an exception to the general rule that statements contained in pleadings are admissible as evidential admissions. See *Danko v. Redway Enterprises, Inc.*, supra, 53 Conn. App. 377–78. In *DeJesus*, the defendant moved to implead a third party. *DeJesus v. Craftsman Machinery Co.*, supra, 561. The motion was granted and, thereafter, the defendant filed a third party complaint, alleging that, if it was found liable to the plaintiff, the third party defendant "should indemnify [it] for any losses or damages." Id.

On appeal, "[t]he plaintiff claim[ed] . . . that the trial court erred in failing to charge the jury that the various allegations contained in the third party pleadings filed by the two defendants against each other could be deemed as admissions against the respective defendants." Id., 564.

"In affirming the decision of the trial court [in *DeJesus*], [the Appellate Court] concluded that statements made in third party pleadings cannot be used . . . by the plaintiff in the original action [as admissions of the third party pleader]. . . . [The Appellate Court] observed that [s]uch statements are made, arguendo, to discuss the hypothetical legal consequences if a certain fact should be determined by the trier, and are not admissions of the facts in question. . . . Third party pleadings are a tool for the assistance of the trier of fact in the determination of ultimate responsibility, if any, for proven liability and damages under the plaintiff's complaint. The cause of action alleged in the pleadings between the interpleading party and the interpleaded party is separate from, and not probative of, the proof of the plaintiff's cause of action which must stand on its own facts within the allegations of his complaint." (Citation omitted; internal quotation marks omitted.) *Danko* v. *Redway Enterprises, Inc.*, supra, 53 Conn. App. 377, quoting *DeJesus* v. *Craftsman Machinery Co.*, supra, 16 Conn. App. 565–66.

In the present case, the Appellate Court concluded that "[t]he factors that prompted us to carve out an exception for third party pleadings in *DeJesus* militate in favor of extending this exception to include statements in an apportionment complaint. . . . [The defendant] moved to implead Red House so that, if the jury rendered a verdict in favor of the plaintiffs, responsibility for the plaintiffs' damages could be apportioned between [the defendant] and Red House. The allegations contained in the apportionment complaint were

contingent and premised on the jury's finding against [the defendant] on the initial question of whether the dance floor was in a defective and unreasonably dangerous condition. A contrary holding would place a defendant at his [or her] peril in that the allegations set forth in his [or her] complaint seeking apportionment in the event of liability in the principal action could be used in that action as admissions establishing liability." *Danko* v. *Redway Enterprises Inc.*, supra, 53 Conn. App. 377–78.

The plaintiffs claim that the Appellate Court's holding in this case is inconsistent with our decision in *Dreier* v. *Upjohn Co.*, supra, 196 Conn. 242. In *Dreier*, the plaintiff, Adeleine Dreier, suffered certain injuries that she claimed were caused by her use of a prescription antibiotic, Cleocin. Id., 243. She initially filed an action against two defendants, namely, Vincent Pepe, the physician who prescribed the allegedly defective drug, and the Upjohn Company (Upjohn), the company that marketed the drug. Id. Dreier alleged that Pepe was negligent in failing to conduct certain tests to determine whether Cleocin was the proper drug for her to take under the circumstances and in failing to heed the manufacturer's warnings about the drug. Id., 243–44. Dreier claimed that Upjohn also was liable for the injuries arising from her use of Cleocin, inasmuch as Upjohn had not adequately warned or informed prescribing physicians of the drug's adverse side effects. Id., 243. Thereafter, Dreier filed an amended complaint in which she withdrew her claim against Upjohn. Id., 244. At trial, Pepe was permitted to introduce the original complaint, which included allegations that Upjohn improperly had failed to warn or inform prescribing physicians about the side effects associated with Cleocin. Id.

On appeal to this court, Dreier claimed that the trial court should not have permitted Pepe to introduce the superseded complaint because, inter alia, the general

rule that withdrawn or superseded pleadings are admissible as evidential admissions has no "rational application under modern pleading practice . . . ." Id., 245. In rejecting Dreier's claim, we explained: "Under our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint. . . . [Dreier] alludes to a line of cases which hold that this type of liberal pleading policy would be frustrated were the pleader subjected to the risk that anything he pleads will be held against him even if he withdraws or abandons it. These cases, therefore, conclude that a withdrawn or superseded statement in one of two alternative claims may not be used as an admission in the trial of the other. . . .

"We do not believe that the policy supporting the liberal pleading rules controlling in this jurisdiction requires any such limitation on the use of superseded or abandoned pleadings as evidence of admissions contained therein. While alternative and inconsistent pleading is permitted, it would be an abuse of such permission for a plaintiff to make an assertion in a complaint that he does not reasonably believe to be the truth. See Practice Book [§ 10-5, formerly] § 111. Our pleading rules were designed to avoid the pitfalls of unnecessary formality, not to allow a plaintiff to engage in fantasy. . . .

"Even those cases which support [Dreier's] position recognize that the superseded allegations have some probative value, for those cases allow the use of superseded or abandoned pleadings as admissions with regard to the specific claim in which they were made. The pleadings are barred from collateral claims not because they are not probative, but because the courts believe they tend to frustrate the practice of alternative and inconsistent pleading. . . . Given that the statements have some probative value, we believe that the

circumstances under which they are made, as with any other admission, go to the weight to be accorded the statements rather than their admissibility. . . . To exclude admissions contained in earlier pleadings would make the filing of a complaint in our procedure serve merely as notice of an intent to investigate the cause of an injury rather than as a plain and concise statement of the material facts on which the pleader relies to invoke the court's jurisdiction. Practice Book [§§ 10-1, 10-20, formerly] §§ 108, 131. Such a result would extend the effect of our liberal pleading rules far beyond the policy supporting them.

"In sum, [the court] continue[s] to believe that [t]he rule concerning the admissibility into evidence of admissions in pleadings is too well established in law and sound in reason to be modified as [Dreier] urges. The time has passed when allegations in a pleading will be treated as mere fictions, rather than as statements of the real issues in the cause and hence as admissions of the parties." (Citations omitted; internal quotation marks omitted.) *Dreier* v. *Upjohn Co.*, supra, 196 Conn. 245–48.

We agree with the plaintiffs that, contrary to the conclusion of the Appellate Court, statements within the defendant's stricken apportionment complaint fall within the general rule of admissibility that we articulated in *Dreier*.[8] We reach this determination for essentially the same reasons that persuaded us to conclude in *Dreier* that a defendant is permitted to introduce as evidential admissions claims or allegations made by a plaintiff in his or her pleading even though the pleading has been withdrawn or superseded.

---

[8] We note that the defendant does not claim that we should overrule *Dreier*. Accordingly, we do not address that issue.

A plaintiff may, with reasonable cause,[9] raise alternative and inconsistent claims in the same case. See, e.g., Practice Book § 9-14;[10] see also *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.*, 217 Conn. 340, 346, 586 A.2d 567 (1991); *Dreier* v. *Upjohn Co.*, supra, 196 Conn. 245; *DeVita* v. *Esposito*, 13 Conn. App. 101, 105, 535 A.2d 363 (1987), cert. denied, 207 Conn. 807, 540 A.2d 375 (1988). Although a plaintiff is, of course, under no obligation to raise such inconsistent claims, he or she reasonably may conclude that it is necessary to do so pending the discovery of additional facts. Under those circumstances, one or more of the plaintiff's claims fairly may be described as contingent on the discovery of such additional facts. See *Dreier* v. *Upjohn Co.*, supra, 247 (acknowledging that statement in original complaint "may [have] be[en] made before discovery at a time when the plaintiff [was] uncertain as to [the statement's] truth"); see also *DeVita* v. *Esposito*, supra, 105–106 (alternative and inconsistent pleading permitted when pleader does not know all facts necessary to make election). Nevertheless, under *Dreier*, that fact "go[es] to the weight to be accorded the [statement contained in the original pleading] rather than [the statement's] admissibility." *Dreier* v. *Upjohn Co.*, supra, 247.

Having concluded that the allegations in a withdrawn, superseded or stricken complaint are admissible as evidential admissions of the plaintiff, we see no persuasive reason to treat a defendant's allegations in a stricken apportionment complaint differently. It is true, of

[9] See Practice Book § 10-5 ("[a]ny allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses . . . as may have been necessarily incurred by the other party by reason of such untrue pleading"); accord General Statutes § 52-99.

[10] Practice Book § 9-14 provides: "Persons may be joined as defendants against whom the right to relief is alleged to exist in the alternative, although a right to relief against one may be inconsistent with a right to relief against the other."

course, that the allegations made by a defendant in an apportionment complaint frequently are predicated on a contingency, namely, the possibility that the fact finder will find the defendant liable to the plaintiff notwithstanding the defendant's denial of liability. There is no significant difference, however, between the nature of that contingency and the inherently conditional nature of inconsistent claims raised by a plaintiff prior to full discovery. Furthermore, just as a plaintiff *may*, but is under no obligation to, raise inconsistent claims when a legitimate basis for doing so exists, a defendant also is under no obligation to file an apportionment complaint, and may not do so without appropriate cause.

The plaintiffs present the following hypothetical to illustrate the unfairness of treating an apportionment complaint differently from any other complaint. In complaint no. 1, the plaintiff sues defendant *A*. In complaint no. 2, defendant *A*, who reasonably believes that nonparty *B* is liable in whole or in part for the plaintiff's injuries, files an apportionment complaint naming *B* as an apportionment defendant. In complaint no. 3, the plaintiff asserts the same claim against apportionment defendant *B* as the claim asserted by defendant *A* against apportionment defendant *B* in complaint no. 2. The plaintiff and defendant *A* thereafter withdraw their complaints against apportionment defendant *B*.

As the plaintiffs explain, under the holding of the Appellate Court in this case, statements that the plaintiff made in complaint no. 3 would be admissible as evidential admissions of the plaintiff. See *Danko* v. *Redway Enterprises, Inc.*, supra, 53 Conn. App. 376–78. Statements that defendant *A* made in complaint no. 2, however, would not be admissible as evidential admissions of defendant *A*. We agree with the plaintiffs that the anomaly presented by this hypothetical raises serious fairness concerns.

Finally, a defendant who files an apportionment complaint that later is stricken will have an opportunity to explain the pleading and the reason why it was filed. Indeed, a similar explanation is necessary to apprise the jury of the nature and import of an apportionment complaint that has *not* been withdrawn or stricken.

We therefore conclude that a defendant's statements in a stricken apportionment complaint are admissible as evidential admissions of that defendant and, consequently, the trial court in this case improperly precluded the plaintiffs from introducing into evidence the statements contained in the defendant's stricken apportionment complaint. We now must determine whether that impropriety was harmful. Although we acknowledge that this issue presents a close question, we are persuaded that the trial court's error in this case was harmful.

The standard that governs our review of this issue is well established. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Internal quotation marks omitted.) *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 614, 711 A.2d 688 (1998). Thus, we must determine whether it is reasonably likely that the result in this case would have been different had the plaintiffs been permitted to introduce into evidence allegations made by the defendant in its stricken apportionment complaint. See id.

The following additional facts are relevant to our resolution of this issue. Redway testified that he and James Allen, an employee of the defendant, loaded a truck with the twenty planks that, upon installation,

comprised the dance floor.[11] According to Redway, he examined those planks and found them to be in a safe and usable condition. Allen testified that he then transported the planks to Red House and installed them. Although Allen could not specifically recall installing that particular dance floor, he testified that he had installed many such floors and that it was his practice to examine the floor upon completing its installation to make sure that it was in a safe condition.[12]

The named plaintiff testified that, while she was dancing on the floor at the wedding reception, she caught her shoe in a rut or hole in the floor and fell and fractured her hip. Consequently, the named plaintiff required a partial hip replacement, which was performed the day after the reception. The named plaintiff never saw the rut that she believed had caused her to fall, but, while she was being attended to a short distance from the dance floor, pointed out to her daughter, Diana Morgan, the spot where she had fallen. Morgan testified that, upon inspecting the area that the named plaintiff had pointed out to her, she observed a rut or hole in the floor a little wider than the heel on one of

---

[11] Each of these twenty planks was three feet wide and six feet long.

[12] The defendant also presented the testimony of Julie Migliaccio, whose marriage was being celebrated at the reception. Migliaccio testified that she did not notice any holes in the dance floor, and she was unaware of anyone other than the named plaintiff who had had any problems with the floor. She also indicated, however, that she did not conduct an inspection of the dance floor. Finally, the defendant presented the deposition testimony of Elizabeth Piacentini, the manager of Red House at the time of the reception. Piacentini testified that she saw the dance floor after it had been installed and prior to the reception, and that she did not notice anything wrong with the floor at that time. Piacentini further testified that she was apprised of the named plaintiff's fall "a few days" after the Saturday reception, probably on the following Tuesday, and that, upon learning of the fall, she inspected the floor and "did not see anything on the floor out of the ordinary that would have caused the fall." Piacentini also testified, however, that she assumed that the dance floor was safe for dancing when it was installed, and that she could not recall whether a portion of the dance floor had been removed prior to her inspection of the floor a few days after the reception.

the shoes that she had worn to the reception.[13] Morgan further testified that, while standing, she placed her heel in the rut. According to Morgan, her heel went into the rut without applying any pressure or force, and she "felt the back of [her] heel catch and . . . almost fell."

Morgan also stated that she did not take a photograph of the rut at that time because she was too busy attending to the named plaintiff, who was in great discomfort. She did, however, attempt to contact Red House to arrange to photograph the rut, but she was unable to reach anyone there until three days after the reception.[14] At that time, Morgan was informed over the telephone that the dance floor had not been removed. Morgan thereafter traveled to Red House, arriving a little more than two hours after the conclusion of her telephone conversation with Red House personnel. When she arrived, however, she found that a portion of the dance floor had been removed, including the section on which the named plaintiff had fallen.[15]

During closing arguments, defense counsel, pursuant to our holding in *Dreier* v. *Upjohn Co.*, supra, 196 Conn. 244–48, urged the jury to consider the fact that the plaintiff originally had sued several other parties. With respect to that issue, defense counsel argued to the jury as follows: "[Counsel for the plaintiff has] brought a lot of issues up that have nothing to do with the legal

---

[13] Morgan also testified that the heels of her shoes and the heels of the shoes that the named plaintiff was wearing when she fell were approximately the same size.

[14] The reception at which the named plaintiff had fallen took place on a Saturday afternoon. Morgan testified that she did not try to reach anyone at Red House on Sunday because the named plaintiff was undergoing surgery for her hip fracture that day. Morgan called Red House on Monday and learned that it was closed that day. Morgan finally reached someone at Red House at approximately 10:30 a.m. on Tuesday.

[15] Although videotapes and photographs of the reception were introduced into evidence, none of them depicted the area of the dance floor where the named plaintiff had fallen.

issues in this case because he's got to bring all these other things to throw at you: kitchen sink complaint. This case started off with four [companies] being sued . . . . [One of the exhibits] . . . is the original complaint listing some of the other [companies] that have gone by the wayside. When we started this case, there were three defense attorneys sitting here questioning you. One went away. And then [another], who sat next to me until the last of evidence, he's gone. So now the issue is the responsibility of [the defendant] as to the plaintiffs' claim and that's the issue you want to focus on. But, I think that's just one of the things that shows you that the plaintiff[s] [do not] have a case here. The issue of confusion comes up throughout."

Under the particular circumstances of this case, we conclude that the trial court's refusal to permit the plaintiffs to introduce into evidence allegations made by the defendant in its stricken apportionment complaint as evidential admissions of the defendant entitles the plaintiffs to a new trial. The outcome of this case rested largely, if not entirely, on the credibility of the parties' witnesses. The plaintiffs, however, were precluded from using the stricken apportionment complaint in its cross-examination of the defendant's two primary witnesses—including Redway, the only defense witness to testify specifically and unequivocally about the condition of the planks at issue in the case—regarding the allegations in that stricken complaint relating to the cause of the named plaintiff's injuries. The plaintiffs also were unable to use the allegations contained in the defendant's stricken apportionment complaint during closing arguments; by contrast, the defendant, in its closing argument, capitalized on the fact that the plaintiffs previously had named several parties in addition to the defendant as being responsible for the allegedly defective dance floor. Finally, it is noteworthy that the key factual allegations of the defen-

dant's stricken apportionment complaint, including the statement that the dance floor "was in an unreasonably dangerous condition" upon installation, are asserted affirmatively and unconditionally. See footnote 3 of this opinion. We therefore conclude that there is a reasonable probability that the result in this case would have been different had the plaintiffs been permitted to introduce into evidence allegations that the defendant had made in its stricken apportionment complaint. Consequently, a new trial is required.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for a new trial.

In this opinion the other justices concurred.