[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Fairfaxx Corporation ("Fairfaxx"), is an executive search firm and in this matter was represented by Richard Gold ("Gold"), one of its executive recruiters. Some time in January of 1998 he was contacted by Mark Greenwald ("Greenwald"), the president of Greenwald Corporation ("Corporation") an apparel manufacturer, with offices in New York City. Apparently Fairfaxx had been recommended to Mr. Greenwald. The position Mr. Greenwald wanted to fill was that of a product on coordinator to deal with all aspects of production including dealing with the five suppliers of goods, four of whom were out of the country. Mr. Greenwald described this position as a key position in his company and it was essential that the company acquire the right person. They continued to talk about the qualifications for the job and the terms of the fee agreement between the two companies Mr. Gold and Mr. Greenwald were the only witnesses in the case, and it is fair to say they agreed upon practically nothing.
Mr. Gold identified plaintiff's exhibit A as a letter encompassing their agreement as to terms that he forwarded to Greenwald on January 26, 1998. Defense counsel called the court's attention to the fact that Mr. Gold referred to him as Jeff Greenwald as opposed to Mark Greenwald. The main terms of the agreement were for a flat fee of twenty-five percent (25%) of the annual salary for the position to be paid within ten (10) days of the employees start date and a forty-five (45) day guarantee from Fairfaxx that if the employee left or was terminated Fairfaxx agreed to replace the employee within sixty (60) days. The agreement had a signature blank for Mr. Greenwald to sign acknowledging his agreement to these terms, which he never signed. CT Page 13196
Gold testified that he phoned Greenwald, who he claims orally agreed to these terms, and he began the search process. He never did get a signed exhibit A so there is no signed writing from the defendant agreeing to any specific terms. Greenwald, on the other hand, testified that he did have a conversation with Gold after the receipt of plaintiff's exhibit A and told him specifically that he would not agree to those terms. He claims he made it clear to Gold that it would take him up to six months on the job to determine if a candidate would make it and he was not going to pay up front and try and get his money back if the person failed. He claims he offered to pay the fee over twelve months, that Gold countered with six months and they compromised at nine months. Gold, of course, denies all of this.
Whatever the case may be, Gold began the process of finding candidates. Greenwald claims that Gold guaranteed that they would screen candidates, check their references, guarantee that candidates were fit for the job and guarantee the job would be filled for one year. Gold denies this.
Be that as it may, Gold provided the resumes of approximately six potential candidates, all of whom were interviewed by Greenwald personally. One in particular, Sara Choe, was interviewed twice. Obviously, Greenwald liked her the first time or he would not have brought her back. On her second interview, he introduced her to his father and other members of the production staff. After discussing her with the other staff people, he hired her for the job at $70,000 annually on March 4, 1998, and she began work on March 9th.
On March 6, 1998, Fairfaxx invoiced Greenwald Corporation for the full commission of $17,500, due in ten days (see exhibit attached to plaintiff's exhibit A). Greenwald testified that when he received it, it was not in conformity with his oral understanding with Gold about periodic payments and he recognized the handwriting on that exhibit as being that of his comptroller Ron Arronne. That handwriting set up a payment schedule beginning April, 1998, in the amount of $2,500 and then eight payments of $1,875 beginning May, 1998 through December, 1998. He claimed it was Arronne who devised the actual payment plan not him. He testified that his company made the first payment of $2,500 on April 16, 1998, paid nothing in May but paid $3,750 on June 9, 1998, for the May and June payments. Those checks were accepted and cashed by Fairfaxx. Greenwald paid nothing in July at least until July 16, 1998, when his company was sued by Fairfaxx for the balance of the commission.
Gold denies agreeing to the payment schedule as shown on the invoice which was attached to defendant's exhibit A. He claims Fairfaxx contacted CT Page 13197 Greenwald by letter dated May 5, 1998, after the first payment of $2,500 was sent. Greenwald was shown a copy of that letter labeled as exhibit "C" to the defendant's responses to the Plaintiff's Request for Admissions dated August 18, 2000. He denied ever having seen that letter even though his company admitted as to Request number 37 that on May 8, 1998, it received the letter. The letter, which speaks for itself, basically requests the payment of the balance of $15,000 owed or legal action would commence.
As has been stated, Sara Choe began her employment on March 9, 1998. Greenwald testified that she failed to succeed in the job, that she was over her head, that department personnel and suppliers, complained about her and in late August he advised her of this. He claims she voluntarily left their employ in early September of 1998. Greenwald did not personally advise the plaintiff of this termination, but thinks someone else in his company might have. He admits he never asked the plaintiff to seek a replacement for her because he did not think it would do it.
The pleadings in this case must be reviewed because the defendant claims that superceded pleading in the case amounts to either a judicial or evidentiary admission against the plaintiff. The initial complaint dated July 14, 1998, was in two counts; the first for breach of the agreement and the second in unjust enrichment. In that complaint in paragraph eight of the First Count the plaintiff alleged that subsequent to the first agreement between the parties they entered into a new agreement which essentially expanded the time frame for payment of the $17,500 commission over a nine month period beginning April 1, 1998, and ending December 1, 1998. That same agreement appears on the original invoice from Fairfaxx dated March 6, 1998, on which the defendant crossed out the invoice and then by its comptroller, Mr. Arronie, penned in a payment schedule over nine months. That is shown on the exhibit attached to defendant's exhibit A. The only difference in that and the pleading by the plaintiff in paragraph eight is that in paragraph eight it refers to payments on the first day of the month whereas the letter only refers to month and year.
That original complaint was withdrawn by the plaintiff on August 13, 1998, when it appeared the case had been settled. When that proved not to be the case, the case was reopened on September 28, 1998, and an amended complaint was filed dated October 19, 1998, wherein it is now alleged that there is a balance due of $11,270 without any reference to the deferred payment schedule. The court asked counsel to brief the issue as to whether the original complaint amounted to a judicial admission or an evidentiary admission.
After reviewing the submissions, the court concludes that the admission CT Page 13198 is only an evidentiary admission and therefore may be contested by the plaintiff, which it has done. Dreier v. Upjohn Co., 196 Conn. 242, 244
(1985); Danko v. Redway Enterprises, Inc., 254 Conn. 369, 375 (2000);Crowell v. Danforth, 222 Conn. 150, 155 (1992).
Based on all the evidence, the court does conclude that the original agreement (plaintiff's exhibit 1), was amended as to the terms and time of payment. How else could the plaintiff possibly plead as it did in paragraph eight of the First Count of the Complaint of July 14, 1998, if it was not directly referring to the payments over a nine month period suggested by Greenwald and put onto paper by Mr. Arrone. The amounts of the payments and their due dates are essentially the same other than the reference to payments due on the first of each month.
That is, however, the only term of the unsigned contract (plaintiff's exhibit 1) that was changed. The placement fee of 25% was not changed. The guarantee to replace was not changed. Only the term of full payment within ten days of employ was changed. That left the defendant with the obligation to pay the full $17,500 by some time in December of 1998, which it did not.
The defendant Greenwald attempts to attach to its agreement with the plaintiff certain guarantees that simply were never made. Mark Greenwald testified essentially that the plaintiff guaranteed that the candidate in question was in fact fit for the job and it further guaranteed that the job would be filled for one year. Other than for his testimony, there is no other evidence to support those claims. The plaintiff denies them and the court finds them not to have been proved.
Let us analyze what the plaintiff promised to do and what it did. It was asked to present candidates for the job of production coordinator and it produced six. It was asked to check their qualifications and references and there is no evidence that it did not. The defendant, acting through its president, Mark Greenwald, interviewed all the candidates initially, brought Sara Choe back a second time, introduced her to the staff of the production department and, after consulting with them, hired her as of March 9, 1998. Admittedly, Mr. Greenwald may have told Mr. Gold at Fairfaxx that it would take him six months to really know if the new employee was suitable, but that was his problem and there is nothing in any oral or written agreement that the plaintiff assumed any obligation covering that.
The plaintiff presented six candidates. There is no evidence that it recommended anyone over the other. The defendant did the interviewing and it more than the plaintiff knew what it was looking for in the applicants and it made its choice. It seems to be arguing that it could not know for CT Page 13199 six months (whether the new employee was suitable) what the plaintiff was supposed to know when it presented the candidates. There is no evidence that the plaintiff assumed any such obligation.
The fact is that the new employee stayed on the job for approximately six months and then left when she was informed her performance was unsatisfactory. The court finds that the defendant had agreed to pay the commission of $17,500 over nine months. Although no writing specifically states the monthly payments were due on the first of each month, logic and common sense would lead to that conclusion. The first payment of $2,500 due in April of 1998 was paid on April 16, 1998. The next payment due in May in the amount of $1,875 was not paid in May but a payment of $3,750 was made on June 9, 1998, for May and June. As of July 16, 1998, when this suit was instituted, no July payment had been made. The defendant never made another payment after June 9, 1998, even though Sara Choe remained in the defendant's employ until early September of 1998.
Upon her termination, the defendant ? asked the plaintiff to attempt to refill the position. That was the only obligation the plaintiff may have had, although the guarantee to replace may have had time limitations.
In summary, the court finds that the plaintiff did everything that it was required to do, the employee stayed on for six months, the plaintiff was never asked to replace the candidate, and the defendant has paid the sum of $6,250 on account of the commission due of $17,500. The court finds the issues for the plaintiff in the amount of $11,250. The court finds the issues for the plaintiff on the counterclaim as well as the complaint. Judgment will, therefore, enter for the plaintiff in the amount of $11,250. The court also finds that the money was withheld by the defendant and therefore orders interest at the rate of ten percent (10%) on the judgment from August 1, 1998.
GORMLEY, J.