## RHONDA BOOKER *v.* MICHAEL K. STERN
## (7170)

DUPONT, C. J., DALY and STOUGHTON, Js.

Argued May 11—decision released August 8, 1989

*Gary F. Gottesman,* for the appellant (defendant).

*Gilbert Shasha,* with whom, on the brief, was *Barry J. Ward,* for the appellee (plaintiff).

STOUGHTON, J. A jury found in favor of the plaintiff on the first and fifth counts of a five count amended revised complaint. From the judgment rendered on each of those two counts, the defendant has appealed.

The defendant claims that the trial court erred (1) in admitting into evidence a photocopy of a check, (2) in excluding certain evidence concerning the plaintiff's conduct, (3) in refusing to submit interrogatories to the jury, and (4) in admitting certain photographs into evidence.

Some discussion of the facts is necessary to understand the claims made and our resolution of those claims. From the evidence presented, the jury could reasonably have found the following facts. The plaintiff met the defendant in 1984. The defendant was a builder and developer and had many business interests, including his interests in a real estate brokerage company, a mortgage company and a beauty salon. A close personal relationship developed between the plaintiff and the defendant, and she obtained a job at his beauty salon.

The plaintiff owned a house in North Stonington. In addition, she was executrix and sole heir of her father's estate which included a house at Lord's Point in Stonington. The plaintiff mortgaged both properties to obtain money to pay off various debts. When she was unable to meet the mortgage payments, the plaintiff

was faced with the likelihood of foreclosure and decided to sell the Lord's Point property. The defendant suggested that the Lord's Point property needed repairs before it would sell. He suggested that the plaintiff would solve her financial problems by renovating the Lord's Point property for sale and an upstairs apartment in the North Stonington house for rental.

On October 31, 1984, the plaintiff, as executrix of her father's estate, conveyed the Lord's Point property to the defendant for $60,000. The deed falsely recited the consideration as $85,000. A housing and urban development closing statement also gave the sales price as $85,000, and falsely showed $25,000 as having been paid by the defendant for repairs. The mortgage was paid off out of the proceeds of the sale. On January 30, 1985, the defendant sold the Lord's Point property for $79,000. No repair work had been done on the property. The defendant retained the proceeds of sale, despite his earlier representation that the property could be renovated and sold at a profit that the plaintiff would receive.

Also, on October 31, 1984, the defendant arranged for the plaintiff to borrow $29,600 from his mortgage company, secured by a mortgage on the North Stonington property. The plaintiff turned over $22,000 to the defendant who promised to use it to pay for renovations and to pay the mortgage payments. The defendant hired workmen who began renovations on the apartment in the house in North Stonington. They stopped work the week before Christmas, leaving the work unfinished. The work done was of poor workmanship and there were a number of code violations. The defendant told the plaintiff that the $22,000 fund had been exhausted.

The plaintiff claimed in the first count of her complaint, that the defendant had fraudulently deprived

her of approximately $25,000 in the purchase of the Lord's Point property. In the second count, she claimed that the defendant had converted to his own use certain personal property stored at Lord's Point. In the third count, she claimed that the defendant had been unjustly enriched by approximately $25,000. In the fourth count, she claimed that the defendant had fraudulently deprived her of approximately $25,000 in failing to complete renovations and to pay mortgage installments on the North Stonington property, and, in the fifth count, she claimed that the defendant had breached his agreement to renovate the North Stonington property.

The first claim of error arises out of the introduction into evidence of a photocopy of a check. The defendant responded to interrogatories propounded by the plaintiff by stating, among other things, that he had spent over $5000 on repairs to the Lord's Point property. He showed, as one of the expenditures, a payment to PRO Cleaners for interior and exterior cleaning and maintenance. He also produced a bill from PRO Cleaners for $500 and a photocopy of check number 775 drawn on Realty Management Associates for $500 payable to PRO Cleaners, signed by Michael K. Stern, and marked "Lord's Pt. - Ston." Stern was called as a witness by the plaintiff and testified that the signature on the check was his but that he had did not know what had been produced by his lawyers. He also said that his secretary had signed his name on the check. He testified that his secretary was authorized to sign his name on checks to pay bills, that the bills produced for work at Lord's Point might have been for work done at the other house and that he did not think the work referred to was done at Lord's Point. The defendant had signed an affidavit stating that the answers to the interrogatories and request for production were true and correct. The documents that had been produced,

including the check for $500 payable to PRO Cleaners, were offered and marked exhibit nine. The defendant specifically denied having prepared altered copies of the actual checks, and testified that many original records had since disappeared from his office.

Against this background, the plaintiff called Mary Lou Ferguson, the defendant's secretary, as a rebuttal witness. Ferguson testified that the defendant had directed her on many occasions to prepare false invoices. She testified that PRO Cleaners did not exist at the time of this transaction and suggested that a copy of the check as it passed through the bank would show a different payee.

After the plaintiff had rested, she was permitted to open her case to offer a photostatic copy of check number 775 which had been obtained by subpoena from the Norwich Savings Society. This check was payable to Michael K. Stern and signed and endorsed by him. The defendant objected, claiming that the copy was hearsay and that the original had not been requested or produced. The court overruled the objection.

The plaintiff recalled Ferguson who testified that she wrote check number 775, that it was made out to the defendant and that exhibit nine was an altered copy of the check.

The copy of the check produced by the bank was direct evidence of the fraud alleged by the plaintiff. It contradicted testimony by the defendant and corroborated testimony by the witness Ferguson. It was not hearsay but documentary evidence of a fraud. No objection was made that it was not the best evidence. In any case, it may have been the only evidence available in light of the defendant's testimony that many records had disappeared from his office.

The defendant argues in his brief that the copy of the check was not admissible under the business entry rule. No such objection was made in the trial court and we refuse to consider it now. Practice Book § 4185.

The defendant's next claim arises out of the exclusion by the court of certain questions propounded to the plaintiff. During the cross-examination of the plaintiff, the defendant's counsel asked if she had had sex with any member of the construction crew that the defendant sent to work on the upstairs apartment of her house. The trial judge excluded this question on the ground that it was overly prejudicial. Later, during direct examination of a defendant's witness, the defendant asked if the witness had ever known the plaintiff to be in love with anyone other than the defendant. The trial court excluded this question on the grounds of relevance. The defendant claims that exclusion of these questions was error because the plaintiff's responses would be relevant to the issue of her credibility.

The trial court has broad discretion in ruling on the admissibility of evidence. *State* v. *Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985). Absent a clear showing of abuse of discretion, we will not disturb the trial court's ruling that evidence is too remote from the fact it is offered to prove to be admissible. Id. In the present case, we agree with the trial court that the plaintiff's sexual conduct is remote from the issues of whether a fiduciary relationship was formed and whether the defendant had committed a fraud, and from the issue of the plaintiff's credibility.

The defendant's third claim of error is that the trial court refused to submit interrogatories to the jury. The defendant originally proposed seventy-one interrogatories. According to the defendant, each interrogatory was a paraphrase of an allegation in the plaintiff's amended revised complaint. This set of interrogatories

was rejected by the trial court and the defendant agreed to reduce the number of questions. At oral argument, the defendant requested twenty-two interrogatories selected from the original seventy-one. The trial court agreed to consider this new set of interrogatories and suggested that counsel offer their arguments for or against the interrogatories as each was read aloud. In this manner, the defendant's proposed set of twenty-two interrogatories was reduced to three. Dissatisfied with this result, the defendant withdrew his request for interrogatories and objected to the procedure employed by the trial court to examine each proposed interrogatory. He also objected to the trial court's refusal to submit all twenty-two interrogatories to the jury. Thereafter, the trial court prepared five separate verdict forms, each coinciding with a different count in the plaintiff's complaint. In its charge to the jury, the trial court informed the jury that count three, for unjust enrichment, was an alternative theory of liability to the allegation of fraud contained in count one. The trial court therefore instructed the jury that if they should find for the plaintiff on count one, they need not consider the alternative theory of liability contained in count three. After deliberation, the jury returned verdicts for the plaintiff on counts one and five and for the defendant on counts two and four.

The law of this state has long recognized that when the plaintiff's complaint contains two or more counts, or when two or more causes of action are incorporated in one count, the defendant has a right to protect himself from the implication of a general verdict. *Sheeler* v. *Waterbury*, 138 Conn. 111, 114–15, 82 A.2d 359, (1951). The rule as to general verdicts is that "where a complaint is divided into counts and a general verdict is returned, it will be presumed, if the charge and all rulings are correct on any count, that damages were assessed as to that count, and the verdict will be sus-

tained." Id. It has been the practice of our trial courts to obtain separate verdicts from the jury on each count of the complaint in cases where each count contains only one cause of action. See *Sellner* v. *Beechwood Construction Co.,* 176 Conn. 432, 439, 407 A.2d 1026 (1979); *Aaronson* v. *New Haven,* 94 Conn. 690, 697, 110 A. 872 (1920); *Johnson* v. *Higgins,* 53 Conn. 236, 241, 1 A. 616 (1885); *Newell* v. *Roberts,* 13 Conn. 63, 73 (1839).

Verdicts separated as to counts operate as general verdicts on those counts. If a count contains more than one cause of action, and a verdict is returned for the plaintiff on that count, the court will presume that the jury found for the plaintiff on each cause of action. See *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 362–63, 294 A.2d 305 (1972). The court will not set aside a verdict for the plaintiff on one count as long as one cause of action within the count supports the verdict. See *Callahan* v. *Jursek,* 100 Conn. 490, 494, 124 A.2d 31 (1924). In order to obtain the jury's determination as to each cause of action within a count, the defendant has a right to resort to interrogatories. Id.; see also *Aaronson* v. *New Haven,* supra; *Johnson* v. *Higgins,* supra.

In this case, the trial court submitted separate verdict forms to the jury. Each count of the plaintiff's complaint contains only one cause of action, despite the defendant's claim to the contrary. The trial court charged the jury that each count contained only one cause of action and we agree. There was no error in the trial court's decision not to submit interrogatories to the jury as to each count after the defendant withdrew his request for interrogatories.

The defendant does not object to the use of separate verdicts. Rather, the defendant objects to the trial court's procedure for selecting interrogatories and to its refusal to submit all of the twenty-two interrogatories requested.

The procedural rule for submitting interrogatories to a jury is found in Practice Book § 312, which provides: "The court may submit to the jury interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict. The clerk will take the verdict and then the answers to the several interrogatories, and thereafter he will take the court's acceptance of the verdict returned and the questions as answered, and proceed according to the usual practice. The court will not accept a verdict until the interrogatories which are essential to the verdict have been answered." Further procedural guidance has been provided by this court. In *Hartford* v. *Anderson Fairoaks, Inc.*, 7 Conn. App. 591, 596, 510 A.2d 200 (1986), we stated: "[I]t is the duty of the court to examine the substance of jury questionnaires to verify their appropriateness to the evidence and issues presented to the jury. If jury questionnaires are improper in form or content, it is incumbent upon the court to rephrase the interrogatories in order that they will guide the jury in reaching their proper verdict. In such event, it is preferable for the court to provide counsel with copies of its interrogatories prior to oral argument."

Our cases recognize that when the defendant requests interrogatories, the trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury. See *Freedman* v. *New York, N.H. & H.R. Co.*, 81 Conn. 601, 614, 71 A. 901 (1909) (when and how counsel may request interrogatories to be propounded, in the absence of any statute or rule, is the duty of the trial court to determine in its discretion); see also *Shenefield* v. *Greenwich Hospital Assn.*, 10 Conn. App. 239, 522 A.2d 829 (1987) (length and form of the interrogatories are determined by the trial court in the context of the case and should not be the basis of error unless there is a clear abuse of discretion). The

trial court may limit the number of interrogatories. *Callahan* v. *Jursek,* supra (interrogatories should be as few in number as will reasonably present the defendant's claims); see also *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 457 A.2d 656 (1983) (trial court properly discarded redundant interrogatory). The trial court may also control the wording of interrogatories. See *Hartford* v. *Anderson Fairoaks, Inc.,* supra.

The trial court attempted to work with the parties in the present case. The trial court heard arguments for and against each of the defendant's twenty-two interrogatories as they were read aloud to the court. The defendant objected to the procedure after the set was reduced to three. We find, however, that the trial court acted in accordance with the procedure outlined in Practice Book § 312.

In his brief before this court, the defendant points to an alleged inconsistency in our Supreme Court's holdings in *Freedman* v. *New York, N.H. & H.R. Co.,* supra, and *Callahan* v. *Jursek,* supra. There is no such conflict. In *Freedman* v. *New York, N.H. & H.R. Co.,* supra, the Supreme Court said: "[W]e shall not attempt to formulate definite rules for determining accurately in every case just what interrogatories may be so submitted to the jury. It may, however, be well to state the following, as some of the general requisites of such permissible interrogatories: They should generally be few in number, and never so numerous as to confuse or perplex the jury in rendering their verdict. They should be so clear and concise as to be readily understood and answered by the jury. Each question should call for a finding of but a single fact. When practicable each question should be so framed as to call for a categorical answer. Each question should ask for the finding of a fact and never for a conclusion of law. No question should ask for the finding of a purely eviden-

tial fact nor of an uncontroverted fact. Although not wholly covering, nor necessarily controlling, the determination of any issue framed, the fact sought to be elicited must be pertinent to some issue, and one which may be of material weight in deciding it. No interrogatory should be permitted, the response to which cannot serve either to limit or explain a general verdict, or aid in proceedings for a subsequent review of the verdict or judgment which may be rendered." In *Callahan* v. *Jursek,* supra, the plaintiff alleged that the defendant induced him through a series of fraudulent statements to purchase an automobile stop signal for the state of Connecticut. The Supreme Court said: "[I]n this case each representation set forth in the interrogatories followed those of the complaint and all were contained in one count. If each representation was found to be false, made with intent to deceive and relied upon by the plaintiff to his damage, there were as many causes of action as there were representations, and the defendant was entitled to have the jury answer each special interrogatory, properly framed, as to each of these causes of action." Id. The defendant reads this aspect of the case as granting a license to all defendants to paraphrase each statement in the plaintiff's complaint in interrogatories to the jury. The holding in *Callahan* v. *Jursek,* supra, is limited, however, to its facts, and a defendant cannot paraphrase the plaintiff's allegations in interrogatories unless each allegation by itself, and if true, would give the plaintiff a cause of action.

The defendant's final claim is that the trial court erred in admitting certain photographs into evidence. The trial court admitted into evidence two sets of photographs that the plaintiff offered in support of her claim in count five of her amended revised complaint that the defendant had performed substandard work in attempting to renovate the upstairs apartment of

her house. The defendant raises two objections. The defendant claims that the plaintiff could not properly authenticate the photographs because she had poor eyesight and was not wearing glasses when she testified that the pictures represented a fair and accurate representation of the condition in which the defendant's workers had left her house. The defendant also claims that the photographs should have been excluded because they were not taken until one year after the defendant's workers had left the plaintiff's house.

Anyone who has personal knowledge of the subject matter of photographs is competent to testify whether they are a fair and accurate representation of what they depict and thereby to lay the foundation for their introduction into evidence. *Cagianello* v. *Hartford,* 135 Conn. 473, 475, 66 A.2d 83 (1949). In the present case, there is no dispute that the plaintiff had personal knowledge. She had lived in the photographed house since childhood. The fact that she did not have on her glasses did not prevent her from determining that the pictures fairly and accurately represented the condition of her house.

The fact that the photographs were taken a year after the defendant's workers had left the plaintiff's house goes to the weight that should be afforded that evidence, not to the issue of authenticity.

There is no error.

In this opinion the other judges concurred.