[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE THE VERDICT
On November 21, 1997, the plaintiff, Victoria Diener (Diener), filed a complaint against the defendant, Fernando Tiago, Jr. (Tiago). The complaint alleged that Diener was injured when her vehicle was struck by a vehicle operated by Tiago. Both vehicles were traveling northbound on Madison Avenue in Bridgeport, and Tiago was following Diener. Tiago is alleged to have passed Diener's vehicle improperly while Diener was attempting to make a left-hand turn into the driveway of a residence on Madison Avenue — for the purpose of turning around to head back in a southbound direction — thereby striking the left side of Diener's vehicle. Tiago filed an answer, denying these allegations and that he is liable for Diener's injuries, and raising the special defense of contributory negligence. Diener replied, denying the special defense. The parties went to trial, and on January 18, 2002, the jury returned a verdict in favor of Tiago. The verdict was accepted and ordered recorded by the court, Ballen, JTR, that same day.
On February 8, 2002, Diener filed a motion to set aside the verdict, pursuant to Practice Book § 16-35,[1] and a memorandum of law in support thereof. In the motion, she raises the following grounds to set aside the verdict: CT Page 8399
 1. The court improperly excluded photographs of Tiago's skid marks leading up to, and depicting the point of, the impact, because Diener set forth a proper foundation for their admissibility.
 2. The court improperly concluded that Madison Avenue is a "busy thoroughfare" without such testimony being offered through any witness.
 3. The court improperly received evidence outside the record by reading Diener's deposition transcript, which was only marked for identification, and relied on said transcript in ruling inadmissible the photographs referred to previously.
 4. The court, in receiving evidence outside the record, failed to consider Tiago's deposition transcript that was also marked for identification.
 5. The court improperly allowed into evidence prior unrelated injuries to arm, neck and forehead.
 6. The court improperly allowed into evidence prior litigation and settlement of claims related and unrelated to the claims of injuries in the present action.
Tiago filed an objection, and an addendum to his objection, to the motion to set aside on February 5, 2002, and February 27, 2002, respectively. He argues that the verdict is adequately supported by the evidence, that the jury could reasonably and legally have reached their conclusion, and that it does not shock the sense of justice so as to compel the conclusion that they were influenced by partiality, prejudice or mistake.[2] The parties appeared before the court to present their arguments on March 13, 2002.
 I STANDARD OF REVIEW A Standard on Motions to Set Aside Verdicts Generally
"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. . . . Before determining whether the CT Page 8400 granting of a motion to set aside is proper, the trial court must look at the relevant law that it gave the jury to apply to the facts, and at the facts that the jury could have found based on the evidence. The law and evidence necessarily define the scope of the trial court's legal discretion. . . . This discretion vested in the trial court is not an arbitrary or capricious discretion, but, rather, it is legal discretion to be exercised within the boundaries of settled law. . . . The trial court, upon a motion to set aside the verdict, is called on to question whether there is a legal reason for the verdict and, if there is not, the court must set aside the verdict." (Citations omitted; internal quotation marks omitted.) PAR Painting, Inc. v. Greenhorne O'Mara, Inc.,61 Conn. App. 317, 322-23, 763 A.2d 1078, cert. denied, 255 Conn. 951,770 A.2d 31 (2001).
"The right to a jury trial is fundamental in our judicial system, and . . . [it] is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." (Internal quotation marks omitted.) Wichers v. Hatch, 252 Conn. 174, 188, 745 A.2d 789 (2000).
"Similarly, [t]he credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury." (Internal quotation marks omitted.) Childs v. Bainer, 235 Conn. 107,112, 663 A.2d 398 (1995). On a motion to set aside a verdict, "[t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable." (Internal quotation marks omitted.) Ormsby v. Frankel, 255 Conn. 670, 692, 768 A.2d 441 (2001).
 B Standard on Diener's Motion to Set Aside the Verdict
In the present case, the plaintiff raises only errors in evidentiary rulings as the basis for her motion to set aside the verdict. "[A] party seeking a new trial because of an improper evidentiary ruling has the burden of demonstrating that the error was harmful. . . . [W]hen determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . The party is entitled to relief from an erroneous ruling on the admissibility of evidence only if the error is also harmful . . . [T]he plaintiff [bears the] burden of demonstrating that the erroneous ruling was likely
to affect the result of the trial. (Internal quotation marks omitted.)Bugryn v. Bristol, 63 Conn. App. 98, 111-12, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143, cert. denied, ___ U.S. ___, 122 CT Page 8401 S.Ct. 544, 151 L.Ed.2d 422 (2001)." (Emphasis added; internal quotation marks omitted.) Janusauskas v. Fichman, 68 Conn. App. 672, 683,791 A.2d 719 (2002); accord Danko v. Redway Enterprises, Inc.,254 Conn. 369, 383, 757 A.2d 1064 (2000); Rokus v. Bridgeport,191 Conn. 62, 70, 463 A.2d 252 (1983).
Similarly, "A trial court has the `inherent power to set aside a verdict where it finds it has made, in its . . . rulings on evidence. . . . a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict.' Munson v. Atwood, 108 Conn. 285,288, 142 A. 737 (1928). `It is proper for a trial court, using due caution, and in the exercise of its discretion, to set aside a verdict' when satisfied that . . . its rulings on evidence were erroneous and that those erroneous . . . rulings were consequential enough to have had a substantial effect on the verdict'Ardoline v. Keegan, 140 Conn. 552, 555-56,102 A.2d 352 (1954)" (Emphasis added) Melo v. Spencer,62 Conn. App. 727, 730, 774 A.2d 217 (2001).
 II DISCUSSION A Whether the Court Improperly Excluded Photographs of Tiago's Skid Marks Leading up to and Depicting the Point of Impact
Diener argues that the court improperly excluded photographs of Tiago's skid marks because she had set forth a sufficient foundation for their admissibility. Tiago argues that Diener could not sufficiently authenticate the photographs, and that they were therefore properly excluded.
"It is axiomatic that the trial court has broad discretion to determine the admissibility of evidence. . . ." Black v. Goodwin, Loomis Britton, Inc., 239 Conn. 144, 162 n. 19, 681 A.2d 293 (1996). "A photograph offered to prove the appearance of . . . [something] which cannot itself be inspected by the jury must first be proved accurate. The accuracy sufficient for its admission is a preliminary question of fact to be determined by the trial judge." (Internal quotation marks omitted.)Tarquinio v. Diglio, 175 Conn. 97, 98, 394 A.2d 198 (1978).
"Ordinarily . . . [a photograph] should be substantiated by testimony that it is a correct representation of the conditions it depicts, and in CT Page 8402 so far as it is properly so authenticated it becomes evidence of those conditions." (Internal quotation marks omitted.) Id. "Anyone who has personal knowledge of the subject matter of photographs is competent to testify whether they are a fair and accurate representation of what they depict and thereby to lay the foundation for their introduction into evidence." Booker v. Stern, 19 Conn. App. 322, 333, 563 A.2d 305 (1989). "[I]n Connecticut the testimony of the photographer is not essential for the authentication of a photograph, as long as other evidence is produced that satisfies the court. Cagianello v. Hartford, 135 Conn. 473, 475,66 A.2d 83 (1949)." Gioielli v. Mallard Cove Condominium Assn., Inc.,37 Conn. App. 822, 834, 658 A.2d 134 (1995).
In Tarquinio v. Diglio, supra, 175 Conn. 97, the court considered the admissibility of photographs depicting the presence of skid marks on a busy thoroughfare more than five hours after the accident.*[3] The court stated that "a photograph depicting such skid marks would be relevant to prove the appearance of the scene only if it could be demonstrated that those same marks were visible on the road immediately after the accident." Id., 99. The court explained that the person laying the foundation for the introduction of such photographs must be able to testify "that the appearance of the road at the time the photographs were taken was the same as it had been following the accident," and that such a witness must have "knowledge of what the road looked like . . . immediately after the accident." Id.
In the present case, Diener was ready to testify that, when she got out of her car immediately after the accident, she saw skid marks directly behind Tiago's tires, that she took the photographs the day after the accident, and that the skid marks in the photographs fairly and accurately depict the way the skid marks looked on the night of the accident. Transcript, pp. 86, 90. This testimony would have properly substantiated and authenticated the photographs. Diener had personal knowledge of the subject matter of the photographs, was therefore competent to testify as to their accuracy and relevancy, and could have laid a proper foundation for their introduction into evidence. The court therefore concludes that, based on the foregoing law, it erred in excluding the photographs of the skid marks.
Tiago's counsel argued vigorously and persuasively that in Tarquiniov. Diglio the photographs had been taken only five hours after the accident, whereas here they were taken a few days after the accident, and that they should therefore be excluded.[4] Tiago's counsel based this argument on the fact that Diener had stated in her prior deposition testimony that she had taken the photographs "a few days later" rather than the next day.[5]
CT Page 8403
These arguments greatly influenced the court in reaching its decision to exclude the photographs. However, the mere fact that Diener had testified to two conflicting versions regarding when she took the photographs is not a proper basis to keep the photographs from the jury where, as here, a plaintiff satisfies the requirements for sufficient authentication. "It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness, and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) State v. Abraham,64 Conn. App. 384, 403, 780 A.2d 223, cert. denied, 258 Conn. 917,782 A.2d 1246 (2001). "Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . The [jury] can . . . decide what — all, none, or some — of a witness' testimony to accept or reject." (Internal quotation marks omitted.) State v. Senquiz, 68 Conn. App. 571, 576,791 A.2d 719 (2002).
Furthermore, as long as photographs are properly authenticated by evidence or testimony showing their accuracy and therefore relevancy, the length of the time-span between the time of the accident and the time when the photographs were taken does not constitute an independent basis to keep them from the jury,[6] but only goes to the weight that should be afforded that evidence. Booker v. Stern, supra, 19 Conn. App. 333. "While the verification of a photograph is a preliminary question of fact to be decided by the trial judge, its weight as evidence is for the jury." (Internal quotation marks omitted.) State v. Castagna, 170 Conn. 80,89, 364 A.2d 200 (1976).
Having concluded that the exclusion of the photographs was an error, the court must next determine whether this error was harmful to the plaintiff's case, i.e., whether the erroneous ruling would have likely
affected the result of the trial; Janusauskas v. Fichman, supra,68 Conn. App. 683; Danko v. Redway Enterprises, supra, 254 Conn. 383;Rokus v. Bridgeport, supra, 191 Conn. 70; and probably brought about a different result in the verdict. Melo v. Spencer, supra, 62 Conn. App. 730. The court must be satisfied that its erroneous evidentiary rulings were consequential enough to have had a substantial effect on the verdict. Id.
"The verdict should be disturbed only by considerations of the mostpersuasive character, as where the verdict shocks the sense of justice. . . . Only under the most compelling circumstances may the court set aside a jury verdict because to do so interferes with a CT Page 8404 litigant's constitutional right in appropriate cases to have issues of fact decided by a jury." (Emphasis added; internal quotation marks omitted.) Hunte v. Amica Mutual Ins. Co., 68 Conn. App. 534,541, 791 A.2d 697 (2002).[7]
Upon a thorough and lengthy consideration of the photographs excluded, the evidence and testimony before the jury, and the credibility of the witnesses, the court cannot say that the erroneous ruling was harmful to the proper disposition of this case and that it likely or probably brought about a different result in the verdict. The court is not of the opinion that the erroneous ruling was consequential enough to have had a substantial effect on the verdict.
The photographs that were excluded depict two skid marks (on the southbound lane of Madison Avenue; both parties had been traveling northbound) that show that the line of travel of the vehicle that produced them was from the northbound lane diagonally across the double yellow dividing lines and into the southbound lane. of the two skid marks, the skid mark claimed to have been produced by Tiago's right front tire, which starts out very light and ends in a one foot long dark mark, commences on the double yellow dividing lines, whereas the skid mark claimed to have been produced by his left front tire is entirely in the southbound lane, several feet in length, and is dark its entire length. Both marks curve left at their end.
During trial, however, Tiago himself testified, on direct examination by Diener's counsel, that he skidded; Transcript, pp. 283, 285; that he left skid marks; Transcript, p. 283; and that he went over the double yellow dividing line in trying to avoid hitting Diener's car. Transcript, p. 285, 300. Tiago testified that he turned his steering wheel to the left in trying to avoid hitting Diener's car. Transcript, p. 285. The length of the skid marks was also testified to before the jury. Transcript, pp. 192-93. Because Tiago admitted these facts, there was no dispute with regard to the skid marks, their position, length, or Tiago's line of travel, that the photographs could have helped to resolve, and they were therefore not so probative on these issues that their exclusion compels the conclusion that they would likely or probably bring about a different result in the verdict. In fact, because a photograph is "no more than the pictorial representation of the testimony of the witness through whom it was offered in evidence;" (Internal quotation marks omitted.) State v. Randolph, 190 Conn. 576, 584,462 A.2d 1011 (1983); and because Tiago, as well as Diener, testified to the material facts that could reasonably be culled from the photographs, they would have constituted merely cumulative evidence,[8] and therefore, the court cannot conclude that the impropriety in disallowing them into evidence was harmful and likely to have affected the result of CT Page 8405 the trial. State v. DeJesus, 260 Conn. 466, 484-86, ___ A.2d ___ (2002);State v. Mason, 186 Conn. 574, 581. 442 A.2d 1335 (1982); State v.McNally, 39 Conn. App. 419, 425-26, 665 A.2d 137 (1995); see also Hayesv. Decker, 66 Conn. App. 293, 294 n. 1, 784 A.2d 417 (2001), cert. granted on other grounds, 259 Conn. 928, ___ A.2d ___ (2002).
 B Whether the Court Improperly Conluded that Madison Avenue is a "Busy Thoroughfare" without such Testimony Being Offered through Any Witness
The court has previously discussed whether it improperly concluded on its own initiative that Madison Avenue is a "busy thoroughfare." See supra footnote 3.
 C Whether the Court Improperly Received Evidence Outside the Record by Reading Diener's Deposition Transcript, Which Was Only Harked for Identification, and Relied on Said Transcript in Ruling Inadmissible the Photographs Referred to Previously
As an initial matter, because the court agrees with Diener that the exclusion of the photographs was an erroneous evidentiary ruling, the court's utilization of Diener's deposition transcript in ruling on the admissibility of those photographs as a basis to set aside the verdict has become moot.[9] Even if, however, that issue is not considered moot, the court notes that there was no error in considering the deposition testimony of Diener for the purpose of deciding Tiago's motion in limine to exclude the photographs.
Although it is true that, "if the deponent is present at the trial and able to testify, his deposition is inadmissible;" Neilson v. HartfordStreet Railway, Co., 67 Conn. 466, 466, 34 A. 820 (1896); nevertheless, it is admissible "under certain circumstances to contradict his oral testimony." Id. To the extent the court allows a deposition to be used to contradict or impeach the oral testimony of a witness it is in evidence and may be considered by the court; id., 468; because otherwise "testimony would be lost." Id., 469; Orton v. Poe, 19 Conn. Sup. 145,147, 110 A.2d 623 (1954); see also Practice Book § 13-31(a)(1) and (3). In the present case, Tiago's counsel used Diener's deposition on the record to impeach her during the proceedings on Tiago's motion in limine. See Transcript, pp. 87-91. The impeachment was to contradict Diener's testimony that she had taken the photographs only one day after the accident. Those portions of the deposition used to impeach her became CT Page 8406 evidence, and the court was entitled to review those portions in ruling on the admissibility of the photographs.
Furthermore, "[t]he admissibility of a deposition into evidence under Practice Book [§ 13-31] is permissive in nature, leaving the ultimate determination to the trial judge. . . . The party making the claim of error has the burden of showing that the court clearly abused its discretion." (Internal quotation marks omitted.) Mack v. LaValley,55 Conn. App. 150, 153, 738 A.2d 718, cert. denied, 251 Conn. 928,742 A.2d 363 (1999) "Pursuant to Practice Book § [13-31 (b)], . . . objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." (Internal quotation marks omitted.) Cooks v. O'BrienProperties, Inc., 48 Conn. App. 339, 353, 710 A.2d 788 (1998). Objections "are waived if not made at that time." (Internal quotation marks omitted.) Id. Here, Diener's counsel did not object to the utilization by Tiago's counsel of the deposition to impeach Diener. Neither did he object to any of the specific questions Tiago's counsel asked Diener during the impeachment, nor, for that matter, when the deposition was taken. Under these circumstances, the objections were waived and the testimony, as well as those portions of the deposition relevant to the impeachment, entered into evidence. Id., 353, 356-57. There was no error.[10]
 D Whether the Court Improperly Allowed into Evidence Prior Unrelated injuries to Arm, Neck and Forehead
Diener argues that the court improperly allowed evidence of unrelated injuries to Diener's arm and forehead, and that this was highly prejudicial to her case. Tiago argues that Diener's counsel "opened the door" to this testimony during the direct examination of his client, because he initially inquired into Diener's medical history.
Diener's counsel argued in his opening statement that his client was here to recover only for the injuries she sustained as a result of the accident in this case, and not for prior injuries for which she received a permanent disability rating. Transcript, p. 56-58; see also Third (Final) Amended Complaint (January 7, 2002), ¶ 5 (alleging Diener suffered aggravation of a pre-existing condition to her lumbar spine as well as other injuries to her lower back, hip and leg). Accordingly, on direct examination, Diener's counsel had his client testify as to prior injuries to and treatment for her neck in relation to a 1992 car accident; Transcript, p. 110; as to her prior slip and fall accident in CT Page 8407 1989 — in which she injured her right arm, right rib cage, right side of her back, and her shoulder — and treatment related thereto; Transcript, pp. 117-18; as to the three to five percent permanent disability rating she received as a result of that accident; Transcript, p. 118; and that she was not asking the jury to award her money for those prior injuries. Transcript, p. 119. Diener also testified on direct that she had another slip and fall in 1996 in which her entire weight landed on her left elbow and her bottom, and that she had elbow pain as a result. Transcript, pp. 120. When asked about this on cross-examination; Transcript, pp. 168-70; Diener's counsel did not object. Furthermore, Diener's counsel also went into the subject of his client's neck injuries on re-direct examination of his client. Transcript, p. 193-94. Finally, the court could not find that Tiago's counsel first elicited any testimony or evidence regarding Diener's forehead. Instead, it found that her own counsel on re-direct inquired as to her injuries in connection with the 1992 and 1996 accidents, and she replied that she had a concussion, a bruised brain, and injuries to her head, as well as to her neck, left elbow, wrist, hand and shoulder. Transcript, p. 196-97.
Based on the above facts and considerations, the court concludes that Diener opened the door to inquiry into injuries to arm, neck, and forehead, and that testimony and evidence related to those injuries was therefore properly admitted.[11]
 E Whether the Court Improperly Allowed into Evidence Prior Litigation and Settlement of Claims Related and Unrelated to the Claims of Injuries in the Present Action
Finally, Diener argues that the court improperly allowed evidence of prior litigation and settlements of claims. Tiago again argues that Diener opened the door to this evidence, and that, in any case, he did not inquire into the precise settlement amounts.
The trial court has broad discretion to determine the admissibility of evidence. See Black v. Goodwin, Loomis Britton, Inc., supra,239 Conn. 162 n. 19. "[T]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court judge. . . . of course, [a]ll evidence is adverse to some party and thus prejudicial to that party's case, but. . . . [evidence] damaging to one s case is inadmissible only if it creates `undue' prejudice so that it threatens an injustice were it to be admitted." (Citation omitted; internal quotation marks omitted.) State v. Ferguson, 260 Conn. 339, 359, ___ CT Page 8408 A.2d ___ (2002).
Diener `briefs' this issue in one single paragraph of only four lines, including a citation to one case that deals with General Statutes §52-216a.[12] That statute, however, is not applicable in this case, because it deals with the admissibility of evidence of a plaintiff's settlement with, or release of, a joint tortfeasor in the same cause of action. In the present case, we are concerned with evidence of prior claims and settlements.[13] Because the only case cited by Diener is not on point, and because the plaintiff has not assisted the court in briefing this issue any further, the court deems this issue waived. SeeState v. Nieves, 65 Conn. App. 212, 215-16 n. 4, 782 A.2d 203 (2001) (stating that issues not briefed are deemed waived and that the court even declines to review inadequately briefed issues); accord State v.Siano, 216 Conn. 273, 281 n. 7, 579 A.2d 79 (1990) ("Where a party fails to brief an issue, it is deemed abandoned").
 CONCLUSION
Based upon the foregoing, as well as upon the consideration of other issues that arise in the context of motions to set aside a verdict,[14]
Diener's motion to set aside the verdict is denied.
 ___________________ BALLEN, JTR